H. H. ROBERTSON COMPANY, a Pennsylvania corporation, Plaintiff,

v.

LUMBERMEN'S MUTUAL CASUALTY COMPANY, an Illinois corporation, Defendant.

Civ. A. No. 81–165.

United States District Court, W. D. Pennsylvania.

March 26, 1982.

Henry W. Fulton and Frank Fleming, Pittsburgh, Pa., for plaintiff.

Robert C. McCabe, Jr., Pittsburgh, Pa., Michael P. Erhard and Michael G. Laskis, Madison, Wis., for defendant.

## MEMORANDUM OPINION

BLOCH, District Judge.

Plaintiff, H. H. Robertson Company, brings this suit against the defendant, Lumbermen's Mutual Casualty Company, seeking payment for supplies it provided for use in a public works project in Madison, Wisconsin, known as the "Madison Bus Garage Project." Plaintiff provided siding and related materials to Schoman, Inc., a subcontractor of Anthony Grignano, general contractor on the project. Grigano, as part of its contract with the City of Madison, provided a bond guaranteeing payment of "all claims for labor performed and material furnished in the prosecution of said

work...." Defendant Lumbermen's was surety on the bond.

Lumbermen's has filed a motion to dismiss, to transfer or stay, or in the alternative, for summary judgment. First, Lumbermen's asks the court to dismiss the action for Robertson's failure to join an indispensable party, the general contractor, Anthony Grignano. If the court does not find Grignano to be indispensable, Lumbermen's asks the court to transfer the case to the Western District of Wisconsin, or, alternatively, to stay consideration of this case pending the outcome of a similar case in that district. Finally, if the court denies these two requests, Lumbermen's moves for summary judgment on the grounds that under Wisconsin law, Grignano's bond does not cover claims of suppliers to subcontractors.

Lumbermen's motions to dismiss, to transfer and to stay will all be denied. However, its motion for summary judgment is granted.

*Lumbermen's Motion to Dismiss*

Rule 19 governs "joinder of persons needed for just adjudication." It embodies a two-step process for determining whether an action should be dismissed rather than proceeding without a party determined to be indispensable. First, the court is to determine whether a proposed party is a "necessary" party pursuant to Rule 19(a):

A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest.

If such a person cannot be made a party, the court is then to determine, pursuant to 19(b), "whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable." In making its determination, the rule directs the court to take into account four factors:

First, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The notes of the Advisory Committee on Rule 19 state: "The factors are to a certain extent overlapping, and they are not intended to exclude other considerations which may be applicable in particular situations."

"There is no prescribed formula for determining in every case whether a person or corporation is an indispensable party or not," *Niles-Bement-Pond Co. v. Iron Moulders' Union*, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145 (1920). The decision is to be made in the light of pragmatic considerations. *Id.; Ross v. Texas Co.*, 23 F.2d 171 (2d Cir. 1927). "[I]t must be based on factors varying with the different cases, some procedural, some compelling by themselves, and some subject to balancing against opposing interests." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

State law defines the substantive rights of the parties, but the determination of indispensability is a matter of federal law. *Hertz v. Record Pub. Co.*, 219 F.2d 397, 399–400 (3d Cir. 1955).

If Lumbermen's loses this action and must pay Robertson the money it seeks, it will be able to recoup this loss from Grignano. The General Agreement of Indemnity

between Lumbermen's, "the Company," and Grignano, "the Indemnitors," provides:

> The Indemnitors will indemnify and save the Company harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expenses which the Company may pay or incur *in consequence of having* executed . . . such bonds. . . . In the event of payments by the Company, the Indemnitors agree to accept the voucher or other evidence of such payments as prima facie evidence of the propriety thereof, and of the Indemnitors' liability therefore to the Company. (emphasis added).

■ It is not necessary that the absent party be bound by the prospective judgment in the case in a technical sense. It is enough if the rights of the absent party will be affected as a practical matter. *Provident Tradesmen, supra.* Thus, it seems clear that Grignano is a person who "claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest. . . ." However, the parties agree that Grignano is not subject to service of process and, therefore, cannot be joined. The court must then proceed to determine whether the action should be dismissed—or more practically, transferred to Wisconsin—for failure to join Grignano.

■ We conclude that Grignano is not an indispensable party to this action and, therefore, decline to dismiss. Our conclusion rests on our belief that Grignano's interest is adequately represented by Lumbermen's in this action and, if Grignano feared otherwise, it could easily intervene.

If plaintiff is totally successful in this action, it will recover about $80,000 from defendant, all of which defendant would presumably recoup from Grignano. Even if Grignano does not rightfully owe Robertson, it could not deny that Lumbermen's paid Robertson "in consequence of having executed" construction bonds for Grignano.

Many cases, however, have recognized that even a party whose interest may be affected by a court action may not be indispensable if its interest is adequately represented by a party already before the court. *Toney v. White*, 476 F.2d 203 (5th Cir. 1973); *Eaton v. Courtaulds North America, Inc.*, 16 F.R.Serv.2d 1115 (S.D.Ala.1972). *But see, English v. Seaboard Coast Line R.R.*, 465 F.2d 43 (5th Cir. 1972). Lumbermen's, of course, stands in the shoes of Grignano for the purpose of this litigation and can raise all the defenses Grignano would have against Robertson if Robertson had sued Grignano directly. In fact, Lumbermen's has raised numerous defenses both of law and of fact.

In *Smith v. Mandel*, 66 F.R.D. 405 (D.S.C. 1975), a creditor had brought an action against the guarantor of the debts of a partnership. The guarantor was a general partner in the partnership. The court concluded that the partnership was not an indispensable party. However, the court noted, "Inasmuch as defendant Mandel is, in addition to being an individual guarantor, a general partner in The Mandel Partnership, it is only logical to assume that he, through counsel, will adequately and vigorously protect the interests of the partnership insofar as defenses to plaintiffs' claim are concerned."

Clearly, Lumbermen's does not have the same reason the individual partner had in *Mandel* to enthusiastically raise and litigate all defenses. Nonetheless, it is hard to imagine a surety staying in business long who did not enthusiastically raise and litigate the defenses of his principal. Furthermore, if Grignano is concerned about Lumbermen's handling of the case, we believe it could intervene at minimal cost.

Rule 24 governs intervention and provides for both intervention of right and permissive intervention. A person has a right to intervene:

> When the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that inter-

est, unless the applicant's interest is adequately represented by existing parties. A court, in its discretion, may allow a person to intervene "when an applicant's claim or defense and the main action have a question of law or fact in common."

Clearly, even if the court would conclude that Grignano does not have the right to intervene, a strong case is made out for the granting of permissive intervention. Practically, intervention does not present major problems for Grignano. It must, in fact, already pay the counsel fees for the presentation of Lumbermen's defense in this action and two Grignano employees are already listed as witnesses in the defendant's pretrial statement. Thus, Grignano would seemingly shoulder no major additional financial burden because of intervention.

Consideration of the second and third factors listed under Rule 19(b) also indicates to us this action should not be dismissed. As to the second factor, it is true that the parties have suggested no means, nor does any occur to the Court, by which we could protect Grignano's interest and still render complete relief, in the event of a favorable verdict for the plaintiff. However, our inability to protect Grignano is not the product of an imperfect federal system but of Grignano's voluntarily having entered into a contract which makes it liable for payments made on its behalf. Anything we would do to protect its interest here would abrogate that contract. As to the third factor, obviously any judgment rendered in this action in the plaintiff's favor would be adequate even in Grignano's absence.

Although in considering Rule 19(b)'s fourth factor, we find that if Grignano were indispensable, plaintiff's interest could be easily protected by simply transferring this action to the Western District of Wisconsin where all parties can be served and where a similar case is already pending, we do not believe this outweighs all the other considerations listed above.

In addition to the *Mandel* case cited above, we have been able to find only one other case dealing with the question presented by this motion. Without any dis-

cussion, the Fifth Circuit in *Continental Can Co. v. Horton*, 5th Cir. 250 F.2d 637 (1958), concluded, as we do today, that the principal is not an indispensable party in litigation against the surety.

*Lumbermen's Motion to Transfer*

28 U.S.C. § 1404(a) provides, "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

In *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court distinguished between private interests and public interests that should be taken into account when considering a motion to transfer. In explaining the importance of private interests, the Supreme Court held:

> Important considerations are the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive. *Gulf, supra* at 508, 67 S.Ct. at 843.

Public factors that must be taken into consideration when viewing a motion to transfer include trying the case in the district of its origin if less congested than the transferee district, keeping the burden of jury duty on members of the community where the cause of action arose rather than in a foreign forum, the local interest in having a local controversy decided at home and the appropriateness of having the trial of a diversity case in a forum familiar with the law of that state.

In considering a motion to transfer, it must be remembered that a plaintiff's choice of a proper forum is paramount and should not be lightly disturbed. *Shutte v. Armco Steel Corp.*, 431 F.2d 22 (3d Cir. 1976). The moving party bears the burden of proving that the balancing of interests

582

weighs in favor of transfer and unless this is clearly established, the plaintiff's choice of forum will stand. *Id.*

Considering first the private interests involved, plaintiff indicates in its pretrial statement that it intends to call three witnesses, two of which are apparently its employees located in Pittsburgh. However, it lists a third individual with a Wisconsin address who is apparently a former employee. Of course, plaintiff's employees could be produced in Wisconsin. Defendant lists 10 witnesses, many of which are listed as "address unknown." However, three of them are listed as former Schomann employees and one may surmise they are Wisconsin residents. In its brief in support of its motion, defendant alleges it will have to present the testimony of several of its witnesses by deposition if the action proceeds in this court. A head count indicates more witnesses are listed from Wisconsin than Pennsylvania.

The defendant does not claim any difficulty in access to documentary proof, nor would this case require a view.

As to the public law factors, we note the court of the Western District of Wisconsin is currently very congested and it is clear that we will be able to decide this action long before it does. Transferring this case to a district where it will not be decided for a considerable period of time is, of course, to the advantage of the moving party, who continues to have use of money in today's high interest economy which the plaintiff claims is rightfully its. Balanced against that consideration, however, is the fact that Wisconsin law will govern the outcome of this litigation. Defendant argues persuasively that the decision of this court on the question of the scope of a bond in a public works contract could have a significant impact on the contracting business in Wisconsin. For this reason, it argues it is best to have a Wisconsin judge decide it.

Some courts have taken into account the fact that a related action is pending in the court to which the action is to be transferred. *See, Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964);

*Teleprompter Corp. v. Polinsky*, 447 F.Supp. 53 (S.D.N.Y.1977). However, since the defendant's attorney in this action instituted suit on behalf of Grignano in Wisconsin and thereafter filed this motion, it is probably not entitled to a great deal of weight in this case.

■ Finally, we note that this motion was not filed until nine months after suit was commenced and one month after discovery was closed. For this reason, and because even though many of the *Gilbert* considerations would seem to dictate transferring this action, we believe the long delay which would await the parties in Wisconsin outweighs them, we decline to disturb plaintiff's choice of forum and deny defendant's motion to transfer.

*Lumbermen's Motion to Stay*

■ Defendant asks this Court to stay its decision pending the outcome of the Wisconsin suit. Since this action was filed first, there is no reason to stay it, having decided to keep it. We deny the motion to stay.

*Lumbermen's Motion for Summary Judgment*

Article 7 of the contract between the City of Madison, Wisconsin, and Anthony Grignano Company provided:

The contractor shall pay or cause to be paid all claims for work and labor performed or materials furnished to such contractor in the prosecution of the work under the contract, and shall furnish a good and sufficient bond . . . conditioned for . . . the payment to each and every person or party entitled thereto of all claims for work or labor performed and materials furnished for or about the work under this contract. . .

In accordance with Article 7, Grignano, as principal, and the defendant Lumbermen's, as surety, issued a bond, one of the conditions of which was "that if the above bonded Anthony Grignano Co. shall . . . pay all claims for labor performed and material furnished in the prosecution of said work

... then this Bond is to be void, otherwise of full force, virtue and effect."

■ Lumbermen's argues that under Wisconsin law it cannot be liable to a supplier of a subcontractor under such a bond. We agree and grant the defendant's motion for summary judgment.

Wis.Stat. § 779.14(1) provides that no contract involving $500 or more for public improvements or public work shall be entered into unless the prime contractor gives a bond issued by a surety licensed to do business in Wisconsin. The statute further provides:

> The bond shall carry a penalty of not less than the contract price, and shall be conditioned for the faithful performance of the contract and the payment *to every person entitled thereto* of all the claims for labor performed and materials furnished under the contract, to be used or consumed in making the public improvement or performing the public work as provided in the contract and this subsection. (Emphasis added).

"The question of whether a person is entitled as a party in interest to sue on a payment bond depends upon whether that person would have a statutory lien in the absence of the bond." *R. C. Mahon v. Hedrich Construction Co., Inc.,* 69 Wis.2d 456, 230 N.W.2d 621, 623 (1975). *Accord, Peabody Seating Company, Inc. v. Jim Cullen, Inc.,* 56 Wis.2d 119, 201 N.W.2d 546 (1972); *Gilson Bros. Co. v. Worden-Allen Co.,* 220 Wis. 347, 265 N.W. 217 (1936). Wis.Stat. § 779.15(1) provides: "Any person furnishing labor or materials to be used or consumed in making public improvements or performing public work ... to any prime contractor ... shall have a lien on the money or bonds or warrants due or to become due the prime contractor therefor...."

In *Lehmann Tire & Supply, Inc. v. Mashuda Construction Co.,* 14 Wis.2d 176, 109 N.W.2d 650 (1961), the Supreme Court of Wisconsin held that a supplier of a subcontractor did not have lien rights under the predecessor statute to § 779.15(1). That statute contained language virtually identical to the language of § 779.15(1), except that it said "to any contractor" instead of "to any prime contractor." Clearly, when the Wisconsin legislature re-enacted the old § 289.53(1) as current § 779.15(1) in 1967, it intended to make clear its agreement with the *Lehmann Tire* decision. By its very terms, § 779.15(1) extends statutory lien rights only to subcontractors of the prime contractor.

It is possible, however, for a bond to provide protection for a wider class of parties than those protected by § 779.15(1). "It is within the city's powers, and proper and commendable, to contract for a performance bond broad enough in terms to protect suppliers of services and materials whose claims are not lienable." *Knuth v. Fidelity & Casualty Co.,* 275 Wis. 603, 83 N.W.2d 126, 128 (1957). Thus, plaintiff's claim would fall within the terms of the bond if the bond were greater in scope than that required by statute.

■ In order to determine the scope of the bond, the bond and the contract whose performance it secures must be construed together. *Riley Construction Co. v. Schillmoeller & Krofl Co.,* 70 Wis.2d 900, 236 N.W.2d 195 (1975); *Iowa Sheet Metal Contractors v. Knab Co.,* 17 Wis.2d 493, 117 N.W.2d 682 (1962); *Fidelity & Deposit Co. v. Metropolitan Sewerage Com'n.,* 191 Wis. 499, 210 N.W. 713 (1926). If the language of the bond and the contract is substantially similar to the language of the statute, then we must conclude that plaintiff, as the supplier of a subcontractor falls without the bond, as it would fall without the statute. If the language of the bond and the contract is broader than the statute, we would then determine whether that broader language was meant to cover plaintiff's claim. Because we conclude that the language of the bond and the contract are substantially similar to the language of the statute, we do not have to make this latter determination.

We note first that Article 7 of the Madison-Grignano contract provides that the contractor shall pay all claims for work and

labor or materials furnished *to it,* and in the same sentence, provides further that a bond shall be provided securing payment "to each and every person or party entitled thereto of all claims for work or labor performed and materials furnished for or about the work under this contract." In compliance with Article 7, the bond subsequently provided secured payment of "all claims for labor performed and material furnished in the prosecution of said work." The quoted portions are compared to the statutory language of § 779.14(1) requiring a bond securing payment "to every person entitled thereto of all the claims for labor performed and materials furnished under the contract." Clearly, there are no material differences between the contract, the bond, and § 779.14(1). For this reason, we must conclude plaintiff cannot recover under the bond.