**MARTECH CONSTRUCTION COMPANY, INC., a Texas corporation, Appellant,**

v.

**OGDEN ENVIRONMENTAL SER-VICES, INC., a Delaware Corporation, Appellee.**

No. S–4484.

Supreme Court of Alaska.

May 21, 1993.

Marc G. Wilhelm, Richmond & Quinn, Anchorage, for appellant.

Michael E. Kreger, Perkins Coie, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This dispute arises from the failed contractor-subcontractor relationship between Ogden Environmental Services, Inc. (Ogden) and Martech Construction Co. (Martech). After Ogden and Martech terminated their relationship through a settlement, Martech was sued by another subcontractor for breach of contract related to the Ogden job. Martech joined Ogden as a party and filed a third party complaint against it. The trial court granted Ogden's motion for summary judgment dismissing the third party complaint with prejudice and directing entry of judgment pursuant to Civil Rule 54(b). Martech appeals. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ogden contracted with ARCO Alaska, Inc. to perform the PCB remediation project at the Swanson River Oil Field Site. Ogden entered into a subcontract with Martech under which one of Martech's tasks was to purchase, deliver and install two 250 kilowatt gas fired generators "including all connection requirements."

Martech brought Ogden together with Cummins Northwest, Inc. (Cummins), a designer who could fabricate switchgear which would automatically shed and transfer electrical loads between the generators. However, a dispute arose in July 1988 over whether "including all connection requirements" required Martech to supply the switchgear, as Ogden claimed, or whether the switchgear was Ogden's responsibility. In October 1988 Martech ordered the switchgear from Cummins at Ogden's request. Both parties continued to deny liability for the switchgear. Each party continued to claim the other was responsible. It was never formally resolved who would pay for or take ownership of the switchgear.

On November 4, 1988, Ogden terminated its subcontract with Martech. On November 10, 1988, Ogden and Martech entered into a Settlement Agreement, Mutual Release and Waiver ending their relationship. The agreement provided that Martech would sell Ogden the on-site equipment and facilities purchased by Martech for the project and listed in the agreement. The switchgear, not yet being on-site, was not listed. Ogden promised to make a payment of $1.5 million to Martech to cover undisputed unpaid invoices.

The settlement recognized that "[t]he exact nature and amounts of the parties' financial and contractual obligations to each other [were] in dispute" and noted that Martech and Ogden were "desirous of fully, finally and forever effecting a mutual release of their financial and contractual obligations to each other." Paragraph 2 of the settlement provides:

> 2. The parties agree that all claims, demands, rights, and causes of action that each other has or may have against the other with respect to the above-described dispute or contract are hereby satisfied, discharged, and settled. The parties also agree to stipulate to the dissolution of the TRO, to discharge the injunction bond, and to seek, obtain and

be bound by a dismissal with prejudice in the above-described action. Except as herein set forth, no party shall have any further obligation to pay any sum pursuant to the contract whether now or hereafter due, whether contingent or uncontingent, whether liquidated or unliquidated.

Paragraph 18, a comprehensive mutual release, provides:

18. The parties agree that this settlement is the compromise of their disputed claims referred to above and hereby agree and acknowledge that any other claims against each other, known or unknown, which arose on or prior to November 4, 1988, or arose pursuant to the contract for past or future losses, expenses or claims of any nature whatsoever (including any liability pursuant to the contract which might have arisen in the future had the contract not been terminated) are forever abandoned, and any right to assert such additional claims for any damages whatsoever are hereby forever waived and barred. It is hereby declared and acknowledged that the undersigned are familiar with the decision of the Alaska Supreme Court in the case of *Witt v. Watkins*, 579 P.2d 1065 (Alaska, 1978),[1] and that it is still the true intent and desire to fully release all individuals, agents, firms or corporations who could at any future date be possible defendants in any action arising out of the matters described herein. The parties acknowledge and assume all risk, chance, or hazard that the alleged damages arising out of this dispute, if any, may be different, greater, or more extensive than is now known by any of the parties hereto. By this agreement the parties intend to discharge any liability which may be discovered now or hereafter, and specifically understand and agree that each has given the consideration herein mentioned in order to be released fully, finally, and completely from all liability for whatever damage, known or unknown, arising from or relating to the subject contract. The parties specifically release and renounce any right they may now or hereafter have to reform, rescind, modify, or set aside this Settlement Agreement, ·Mutual Release and waiver because of mutual or unilateral mistake. The risk of mistake is hereby assumed by the parties in consideration of the dismissal of the action described above. It is declared and acknowledged that no promise or inducement which is not herein expressed is made to secure this release. It is represented that this settlement release was not secured in haste by the instigation of the parties released, the undersigned were not (in agreeing to this settlement and to this release) at a bargaining disadvantage because of the nature of the action or the injuries or damages or for any other reason, and that all parties have been represented by legal counsel throughout the course of negotiations which have led to this release.

The settlement agreement also provided for arbitration of disputes regarding approval of daily worksheets for work performed and payment of invoices. Martech filed a demand for arbitration against Ogden on December 30, 1988 on a number of these claims, but not for the switchgear. Martech was awarded $19,127.24 by the arbitrator.

On November 17, 1988, Cummins informed Ogden by letter that Ogden could

---

1. In *Witt v. Watkins,* Witt, an automobile accident victim, agreed to a settlement on the assumption that he had sustained only broken and bruised ribs as a result of the accident. 579 P.2d at 1066–67. The settlement released the driver from any and all claims "on account of all injuries, known and unknown, both to person and property, which have resulted or may in the future develop." *Id.* at 1067. Witt later learned that he had also broken two vertebrae in the accident. He filed suit for additional damages, notwithstanding the settlement. *Id.*

This court allowed the suit, rejecting the distinction between unilateral and mutual mistake as a basis for reforming the settlement. *Id.* at 1068, 1070. In its place, this court held that the decisive inquiry was "whether, at the time of signing the release, the releasor intended to discharge the disability which was subsequently discovered." *Id.* at 1068–69. This court also specifically limited its holding to releases for personal injuries and held that it had "no application to issues of mistake in commercial transactions." *Id.* at 1071 n. 18.

purchase the switchgear for $54,183.75. The letter noted that the switchgear would be ready for delivery by December 15 if Ogden accepted the bid by November 18. The letter also noted that Martech was being assessed a cancellation charge of at least $44,000 on the initial order. Ogden, however, purchased an automatic switchgear from another supplier.[2]

On August 24, 1989, Cummins filed suit against Martech alleging numerous payments due, including that for the switchgear. In response, Martech asserted that it was acting as a disclosed agent and that Cummins had failed to join necessary parties. Martech also filed a third party complaint against Ogden. The superior court denied Martech's motion to join Ogden as a third party defendant.[3] Martech then moved to join Ogden as a necessary party under Civil Rule 19 and to reconsider its denial of the motion to file the third party complaint.[4] *See* Alaska R.Civil P. 19(a) (1991–92). The court joined Ogden under Civil Rule 19 and ordered that Martech's complaint against Ogden be filed.

Ogden moved for summary judgment on the third party complaint on the basis of the settlement agreement. The trial court granted the motion. It also granted Ogden's motion for attorney's fees.[5] Martech

sought clarification whether Ogden was still a party to the lawsuit. The trial court, finding that there were no other claims against Ogden, noted that Ogden was no longer a party to the lawsuit.

Martech appeals the grant of summary judgment on its third party complaint, the removal of Ogden as a joined party,[6] and the award of attorney's fees.

## II. DISCUSSION

### A. SCOPE OF THE SETTLEMENT

#### 1. Standard of Review.

■ This court will review de novo the trial court's grant of summary judgment based on the interpretation of a contract. *Peterson v. Wirum,* 625 P.2d 866, 871–72 (Alaska 1981). A release is interpreted in the same manner as any other contract. *Schmidt v. Lashley,* 627 P.2d 201, 204 n. 7 (Alaska 1981). Summary judgment is inappropriate where the evidence before the trial court establishes that a factual dispute exists as to the parties' intent. *Peterson,* 625 P.2d at 870. This court must draw all reasonable inferences of fact in favor of the party opposing the summary judgment. *Zeman v. Lufthansa German Airlines,* 699 P.2d 1274, 1280 (Alaska 1985).[7]

2. The parties characterize these events differently. Martech contends that Ogden "refused to accept delivery of or pay for the switchgear." Ogden contends that Cummins offered the switchgear to Ogden "in an effort to mitigate its losses as a result of Martech's refusal to accept delivery of the switchgear." Cummins' complaint supports Ogden's characterization of the transaction.

3. This denial is not part of the record. However, the existence of the denial is evidenced by Martech's motion to reconsider.

4. Cummins opposed these motions on the grounds that it had no claims against Ogden and that it had only contracted with Martech.

5. The trial court awarded Ogden 50 percent partial actual fees plus a 15 percent augmentation attributable to Martech's conduct during the litigation:
    3. This court finds that Martech's joinder of Ogden and the tenacity with which it opposed their dismissal are accurately characterized as by Ogden as an implacable emeshing [sic] of the third-party defendant in Martech's

defensive posturing. In the court's view this conduct falls short of being vexatious, but beyond mere vigorous advocacy, perhaps in the range of hardball.
    4. The court further finds that the claim against Ogden, while colorable, was a light pastel in hue inasmuch as the broad language of the agreement clearly released such claims.
    5. This court accordingly finds and concludes that Ogden is entitled to recover an augmentation beyond "partial compensation of its attorneys' fees."

6. During this appeal, the trial court granted a motion by Martech requesting that Cummins be ordered to file an amended complaint naming Ogden as a defendant. Martech then submitted a motion to dismiss its appeal of the joinder issue as moot. Later, however, the trial court reconsidered its order and vacated Cummins' complaint against Martech.

7. Contrary to the dissent's suggestion, we do not accept Ogden's view of the facts. We simply note that an unresolved dispute existed over responsibility for payment for the switchgear,

### 2. Was the settlement intended to address the switchgear?

■ The key inquiry regarding this issue is whether the mutual release set forth in the settlement agreement applies to the dispute concerning the switchgear.[8] Martech contends that the release does not apply because Ogden's refusal to purchase the switchgear occurred after the settlement was executed, and therefore was not anticipated at the time of execution. Ogden contends that even if it had a duty to purchase the switchgear, the dispute over the switchgear "arises out of" the settled transaction and the duty was thus discharged by the settlement.

Martech claims that the agreement between Ogden, Cummins and itself was a separate agreement from the principal subcontract and thus not encompassed by the settlement agreement. It argues that the wrongful act from which the claim arose, Ogden's refusal to take delivery of the switchgear, occurred after the settlement was executed and thus did not arise on or prior to November 4, 1988.

Martech relies on *Petroleum Sales, Ltd. v. Mapco Alaska, Inc.,* 687 P.2d 923 (Alaska 1984), for the proposition that a settlement agreement does not release liability for post-settlement conduct. Mapco was sued by two local fuel distributors for antitrust violations. *Id.* at 925. The suit was

---

and that there was insufficient evidence to create a genuine issue of material fact to the contrary.

Martech's president, Ben Tisdale, supplied an affidavit in support of Martech's opposition to Ogden's motion for summary judgment. Attached to the affidavit are letters and memoranda evidencing that each party continued to deny liability for the switchgear and to insist that the other was responsible. Mr. Tisdale then states, "After the design was finalized, Ogden directed Martech to place an order for the switchgear. Martech did so, but only after Ogden agreed to pay for the switchgear." There is evidence that Ogden requested Martech to order the switchgear. However, aside from Tisdale's assertion, there is no evidence that Ogden "agreed" to pay for the switchgear, thereby abandoning its position that Martech was responsible for paying for the switchgear. Tisdale offers no facts to support his assertion. There is no reference to letters, memoranda, or other writings in which Ogden agreed to pay for the switchgear. There is no reference to any conversations during which Ogden agreed to pay for the switchgear. There is no evidence who, by whatever means, agreed on Ogden's behalf to pay for the switchgear. There is no evidence to whom at Martech the agreement was conveyed. There is nothing in the record except Mr. Tisdale's naked assertion that before Martech placed the order, Ogden "agreed" to pay for the switchgear.

To defeat a motion of summary judgment an adverse party may not rest upon mere allegations, but must set forth specific facts showing that there is a genuine issue of material fact. Alaska Civil Rule 56(e). To create a genuine issue of material fact there must be more than a scintilla of contrary evidence. *Yurioff v. American Honda Motor Co.,* 803 P.2d 386, 389 (Alaska 1990).

Because we conclude that the settlement release applies to the switchgear regardless of any alleged agreement, even had Martech alleged sufficient facts to establish a dispute whether an

agreement existed, this question would not be material to our resolution or defeat summary judgment.

**8.** Martech's contentions that questions of fact exist whether the true intent of the parties was not to release liability for the switchgear are addressed directly by the release. Martech relies on *Witt v. Watkins,* 579 P.2d 1065 (Alaska 1978), and explains that the switchgear was never discussed during the settlement negotiations. However, paragraph 18 specifically accounted for a defense based on *Witt v. Watkins.* Paragraph 18 states that the true intent of the settlement is to release all parties "who could at any future date be possible defendants in any action arising out of the matters described herein." Thus the relevant inquiry is whether the switchgear dispute *arose out of* the dispute covered by the settlement or whether it is a separate dispute which arose out of independent facts after the settlement was executed.

Moreover, the fact that the switchgear was not discussed cannot be interpreted as a positive inference that the release was not intended to address it. This court has before held that "Differences of opinion among the parties as to their subjective intent, expressed during litigation, do not establish an issue of fact regarding the parties' reasonable expectations at the time they entered into the contract.... Rather, the court must look to express manifestations of each party's understanding of the contract." *Peterson v. Wirum,* 625 P.2d 866, 870 (Alaska 1981).

Similarly, Martech's contentions that it was at least mistaken and that a question of fact exists as to its liability regarding the switchgear are addressed explicitly by the release: "The parties specifically release and renounce any right they may now or hereafter have to reform, rescind, modify, or set aside this [settlement] because of mutual or unilateral mistake."

settled and a settlement and release was executed which covered "any and all claims, equitable and legal, known or unknown, which they presently have ... and each covenant not to sue [the other] based on any such claims existing as of this date." *Id.* at 926 (alteration, omission in original). Two years later, the distributors again sued Mapco for antitrust violations. The suit claimed that price increases instituted after the settlement were unlawfully exploitive. *Id.*

The issue before the court was whether the distributors "asserted a claim sufficiently distinct from those which they voluntarily relinquished" in the settlement. *Id.* at 927. This court held that the second suit, although based on new conduct which triggered the litigation, "substantially echoe[d]" the settled suit because both required that Mapco be found to hold a monopolistic position. *Id.* at 928. Since that finding was covered by the settlement, it could not be litigated again. *Id.* We also held that the behavior addressed in the settlement, unlawful monopolistic pricing, encompassed both the underpricing complained of in the first suit and the overpricing complained of in the second suit. *Id.*

We did not discount the possibility that in the future the distributors could maintain an antitrust claim against Mapco. "There is no dispute that a new cause of action accrues for damages caused by post-settlement antitrust conduct each time such new or renewed conduct is engaged in." *Id.* at 929. However, the new cause of action would have to be actionable independently of the monopolistic position approved of in the settlement.[9] *Id.* at 928–29. We rejected the blanket contention that the settlement should not cover post-settlement damages from post-settlement conduct, because the damages were too uncertain at the time of the settlement. We held that

the release would cover "all claims reasonably ascertainable at the date of its execution." *Id.* at 930.

The claim sought to be maintained in this case is not the independent claim envisioned in *Mapco.* The settlement declares that the parties intended to resolve all of their "financial and contractual obligations to each other." Even assuming that an agreement for Ogden to purchase the switchgear existed,[10] we are not persuaded that this agreement was wholly independent from the principal subcontract discharged by the settlement. Delivery of and payment for the switchgear were not resolved at the time the settlement was executed. Thus, the failure of Ogden to accept the switchgear does not stand as a cause of action without the background of the dispute addressed by the settlement agreement. Therefore, existing questions of fact regarding the possible agreement by Ogden to pay for the switchgear will not defeat the summary judgment.

The release executed by Ogden and Martech was not limited to claims on the principal subcontract. Rather, the liability was released against any "claims of any nature whatsoever" between the parties. The settlement thus sought to resolve the entire transaction. The dispute over the switchgear existed before the settlement, the responsibility for the switchgear being debated back and forth between Ogden and Martech. Certainly the dispute between Ogden and Martech regarding the switchgear was a claim "arising from or relating to the subject contract." We conclude that this claim was abandoned in accordance with the settlement.

Moreover, we conclude that the claim involving the switchgear was encompassed in the settlement according to the test for certainty employed in *Mapco.*[11] The claim regarding the switchgear was an issue which was "reasonably ascertainable" at

---

9. "[A]ppellants themselves are not barred from bringing a future claim on the basis of actionable conduct occurring subsequent to the release date.... [A]ppellants are minimally required to base their claims on new factors or additional circumstances which are evocative of anticompetitive conduct." *Mapco,* 687 P.2d at 930.

10. Indeed, an agreement by Ogden to purchase the switchgear would have made the switchgear an item subject to invoice and thus arbitrable under paragraph 5(d) of the settlement.

11. Arguably the release in this case is broader in scope than the one at issue in *Mapco.* The *Mapco* release does not include the language

the time of executing the settlement. *See Mapco,* 687 P.2d at 930. Even if Martech justifiably believed that Ogden would pay for and own the switchgear, Martech signed the purchase order and was contractually bound to Cummins. Martech should have anticipated that the switchgear issue would be resolved by the settlement along with the entirety of the contractual relationship.

It is not significant that the switchgear was never actually discussed in the settlement negotiations. First, the agreement indicates a complete washing of the hands between the parties using as soap blatantly broad language to cover all possible causes of action: "All liability from whatever damage," "fully, finally and forever;" "any damages whatsoever;" "claims of any nature whatsoever;" and "all claims, demands, rights, and causes of action that each has or may have against the other that abandons claims "known or unknown, arising from or relating to the subject contract."

**12.** As the dissent points out, the release does use the word "arose." Yet while quoting the language of the release, the dissent fails to give meaning to the second half of the release clause. The use of the past tense in one part of the clause does not negate the fact that the release also applies to future claims which might arise out of the contract. The release uses the disjunctive *or* applying to claims which arose prior to November 4, *or* which arose pursuant to the contract for past or future losses. The release then specifically encompasses "claims of any nature whatsoever (including any liability pursuant to the contract which might have *arisen* in the *future* had the contract not been terminated)." (Emphasis added). Care was not taken to limit the application of this release. On the contrary, care was taken to include any and all liability which arose, or might arise, pursuant to the parties' contractual relationship.

**13.** Ability to address the switchgear conflict through arbitration forms the basis for Ogden's assertion of res judicata. Ogden argues that Martech could have submitted the claim to arbitration, as provided for in the settlement, but did not.

Under the doctrine of res judicata, a judgment on the merits of the controversy bars subsequent actions between the same parties upon the same claim.... It is settled that res judicata precludes relitigation by the same parties, not only of claims raised in the first proceeding, but also of those relevant claims that could have been raised.

with respect to the above-captioned dispute." Second, although the switchgear was not specifically discharged, neither was it specifically reserved as an independent claim. The broad language used implies that claims not specifically contemplated are settled. Those deserving special attention were addressed separately. There are no catch-all phrases to preserve omitted claims as there are to abandon them.[12] Third, if an agreement did exist for Ogden to purchase the switchgear, it arose pursuant to the contractual relationship as it could have been one of the items for which an invoice was to be submitted to arbitration.[13]

## B. RULE 19 JOINDER

### 1. Standard of Review

■ This court has before reversed a trial court's order of joinder under Civil

*DeNardo v. State,* 740 P.2d 453, 455–56 (Alaska 1987), *cert. denied,* 484 U.S. 919, 108 S.Ct. 277, 98 L.Ed.2d 239 (1987).

Martech and Ogden were involved in arbitration which was intended to resolve "a dispute aris[ing] among the parties regarding approval of any daily worksheet or payment of any invoice." Martech contended below that the switchgear was not subject to arbitration because the settlement agreement "only requires that disputes arising out of the settlement agreement itself be addressed by arbitration." However, questions concerning the scope of the release, such as whether it encompasses the switchgear agreement, are arbitrable. The settlement agreement provides for arbitration of "[a]ll claims, disputes and matters in question arising out of or relating to this agreement or the breach thereof."

Martech submitted a number of invoices to arbitration. Eight months later Cummins filed suit against Martech over the switchgear. Eight months later still, the arbitrator awarded Martech $19,127.24. The claim for the switchgear was not submitted to the arbitrator. Martech did not challenge the award.

The problem with res judicata in this case is that the award apparently was never confirmed, nor was a final judgment entered pursuant to AS 09.43.110 and 09.43.140. Ogden argues that since the award was not challenged, it became, "for all practical purposes, a final judgment." Since the statutory period of 90 days to correct, modify or vacate an arbitration award has passed, it is arguable that the entering of the judgment would be a formality. *See* AS 09.43.-120, AS 09.43.130. However, because we conclude that the release encompassed the switchgear claim we need not reach this issue.

Rule 19 when it found that the trial court abused its discretion. *See Farmer v. State*, 788 P.2d 43, 51 (Alaska 1990). Questions regarding the interpretation of Rule 19 are subject to de novo review by this court. *Zsupnik v. State*, 789 P.2d 357, 359 (Alaska 1990). In such cases, this court will "adopt the rule of law which is most persuasive in light of precedent, policy and reason." *Id.*

2. Finality of the Judgment

Ogden contends that this court is without jurisdiction to consider the trial court's order that "other than as a prevailing third-party defendant in its motion for attorneys' fees, Ogden is not a party to the remaining lawsuit." It argues that the joinder order was interlocutory and not subject to review by this court.

■■■ This court has jurisdiction to consider appeals from *final judgments* entered by the superior court. Alaska R.App.P. 202(a) (emphasis added). "The basic thrust of the finality requirement is that the judgment must be one which disposes of the entire case, '... one which ends litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Greater Anchorage Area Borough v. City of Anchorage*, 504 P.2d 1027, 1030 (Alaska 1972) (quoting *Catlin v. United States*, 324 U.S. 229, 233, 65 S.Ct. 631, 633, 89 L.Ed. 911 (1944)), *overruled in part by City and Borough of Juneau v.*

*Thibodeau*, 595 P.2d 626, 629 (Alaska 1979) (holding that *Greater Anchorage Area Borough* did not apply to remand orders from the superior court acting in its appellate capacity). This court should look to the effect of the judgment, rather than the form. *Id.* at 1030–31.

Generally, orders granting or denying motions to join parties to an existing lawsuit are interlocutory. *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. Unit A Oct.1981); *Prop–Jets, Inc. v. Chandler*, 575 F.2d 1322, 1325 (10th Cir.1978). However, in this case the order declaring Ogden a non-party was a denial of Martech's motion for clarification of the order dismissing the third party claim. The order dismissing the third party claim was certified by the superior court as a final judgment under Civil Rule 54(b).[14] Martech is appealing this first order. The second order only serves to elucidate the effect of the first order. Thus Martech is appealing a final judgment.[15]

3. Was the order joining Ogden as a party ever vacated?

■■■ Martech contends that the August 1, 1990 order joining Ogden as a party pursuant to Civil Rule 19 was never vacated. It thus contends that to the extent that the January 4, 1991 order ruled that Ogden was no longer a party, the order was in error.[16] It argues that whether

**14.** This court has jurisdiction to consider appeals from judgments certified as final pursuant to Civil Rule 54(b). *Johnson v. State,* 577 P.2d 706, 710 (Alaska 1978).

**15.** Martech contends that even if its appeal is directed at the second order, that order should be considered final because it relates back to the first order. This is also a sound rationale for exercising jurisdiction over the appeal.

**16.** Martech's argument is basically that Rule 19(a) is self-effectuating. That is, once an entity is joined under Rule 19(a) it is a "party" and must comply with discovery requests even though a complaint has not been filed against it. Martech contends that the civil rules do not require a complaint for joinder of a party under Rule 19(a).

It is true that a defendant is not required to file a claim against one it has joined as a co-defendant in order to effect the joined party

status. As an alternative, courts have ordered that the *plaintiffs* file an amended complaint naming the joined party as a defendant. *See, e.g., Parkview Corp. v. United States,* 85 F.R.D. 145, 148 (E.D.Wis.1980) (directing sua sponte that plaintiff serve new co-defendant with pleadings); *Kodiak–Aleutian Chapter of the Alaska Conservation Society v. Kleppe,* 423 F.Supp. 544, 546 (D.Alaska 1976) (using Federal Rule of Civil Procedure 19(a)).

However, we do not believe that Rule 19(a) is self-effectuating. There must be some form of claim filed against the joined party in order for it to be a "party" to the lawsuit. The cases cited by Martech do not support the proposition that a complaint need not necessarily be filed against the joined party.

The referencing of a third party in the defensive posture is not sufficient to effectuate a joinder. Even if the order compelling Cummins to file a complaint against Ogden had not been

Ogden was properly joined as a party under Civil Rule 19(a) is not an issue in this appeal.

■ The trial court's May 25, 1991 order that Ogden was no longer a party to the lawsuit was based on a lack of existing claims against Ogden. Ogden's response to Martech's motion for clarification claimed that the August 1 order was not effective because Cummins refused to file a claim against Ogden as a co-defendant.[17] Martech contends that the trial court's adoption of Ogden's reasoning is evidenced by the fact that the trial court signed Ogden's lodged order without modification.

The January 4 order, as explained in the clarifying order of May 25, implicitly vacated the August 1, 1990 order which joined Ogden as a co-defendant. It is not necessary for either the trial court or the parties to use the term "vacate" or any derivative thereof. We conclude that Judge Ripley's intention was to supersede the previous order.

3. Did the trial court abuse its discretion in vacating the Rule 19(a) joinder?

Although it urges otherwise, Martech's appeal of the propriety of the January 4 order is tantamount to an appeal of an order vacating a Rule 19 joinder. We thus examine the merits of the refusal to order joinder.

■ Civil Rule 19(a) provides that a party should be joined if "complete relief cannot be accorded among those already parties." Alaska R.Civ.P. 19(a) (1991–92).[18] "[I]t must be noted that complete relief refers to relief as between the parties already parties, and not as between a party and the absent person whose joinder is sought." 3A *Moore's Federal Practice* ¶ 19.07–1[1], at 19–93—96 (2d ed.1991).

Cummins seeks to recover from Martech for breach of contract. Martech defends that it was acting as an agent of a disclosed principal and thus not a party to the contract. *See Restatement (Second) of Agency* § 320 (1958). The lawsuit between Cummins and Martech will necessarily make an adjudication about the relationship between Martech and Ogden.

However, Martech, the party seeking joinder, can be found not liable to Cummins without Ogden joined as a party. Cummins will be afforded complete relief if Martech is found to be liable. Cummins would be afforded incomplete relief only if there is a finding that Martech and Ogden

vacated, Martech still would have had to seek a Rule 19(a) joinder anew.

**17.** Additionally, Ogden argued in its motion for summary judgment that the August 1 order joining Ogden as a defendant was not effective absent a voluntary claim made by Cummins against Ogden pursuant to Civil Rule 14. *See* Alaska R.Civ.P. 14 (1991–92). Ogden asserted that "Martech's reliance upon Rule 19 was redundancy."

**18.** Civil Rule 19(a) also contains the qualifications that a person will be joined as a party if "he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect the interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest." Alaska R.Civ.P. 19(a). However, these factors are not relevant when the party to be joined is resisting the joinder. *Padgett v. Theus,* 484 P.2d 697, 704 (Alaska 1971) (holding that appellants "should be enjoined from assert-

ing that [the party to be joined]'s interest in the present case requires that the judgment be set aside on grounds of failure to join an indispensable party"). Moreover, the factors are not applicable when, as here, there is no chance of an obligation arising between the defendant and the absent party. *See* 3A *Moore's Federal Practice* ¶ 19.07–1[2.–2], at 19–111 (2d ed.1991) (discussing that factor (i) is to protect the absent party and that factor (ii) is to protect the defendant which might be subject to a similar obligation to the absent party).

The interests relevant in Rule 19(a) joinder questions have also been described as follows: "(1) the plaintiff's interest in having a forum; (2) the defendant's wish to avoid multiple litigation or sole responsibility for a liability [it] shares with another; (3) the interest of the outsider; and (4) the interest of the courts and the public in complete, consistent, and efficient settlement of controversies." *R.J. Williams Co. v. Fort Belknap Housing Authority,* 92 F.R.D. 17, 21 (D.Mont.1981). According to this list it is difficult to identify an interest which is implicated in this case since the "outsider" disclaims any interest.

are *jointly* liable.[19] *But see Japan Petroleum Co. v. Ashland Oil, Inc.*, 456 F.Supp. 831, 836–37 (D.Del.1978) (assuming that an absent party which could alone be liable for plaintiff's damages was a necessary party). Because the settlement agreement settles all liability between Ogden and Martech, there cannot be the situation where those two parties share liability for the switchgear. Thus, contrary to Martech's arguments, Martech and Ogden cannot be joint obligors.[20]

Ogden's presence as a party is not necessary for a just adjudication of the Cummins–Martech dispute. The evidence needed to make the determination that Martech was the disclosed agent of Ogden can be obtained from Ogden as a witness. It is not necessary that Ogden be a party.

If Martech prevails, Cummins may have to sue Ogden to recover payment for the switchgear. Further, Ogden may be bound by a prior finding of agency. However, later litigation will not affect Martech. Ogden strongly resists its inclusion in this suit while being fully aware of this possibility. Cummins is free to amend its complaint again and include Ogden as a defendant.[21]

## III. CONCLUSION

The settlement agreement contemplated all present and future claims arising out of the Martech–Ogden contracting relationship. The third party complaint was properly dismissed. The trial court's order dismissing the third party claim also effectively vacated the prior order of joinder. The trial court did not abuse its discretion in vacating the joinder. In view of our holding, we do not address the issue of attorney's fees.

AFFIRMED.

MATTHEWS, J., with whom RABINOWITZ, C.J., joins, dissents.

MATTHEWS, Justice, with whom, RABINOWITZ, Chief Justice, joins, dissenting.

On appeal from the grant of a summary judgment we accept as true that version of the facts advanced by the losing party. *Frantz v. First Nat'l Bank of Anchorage*, 584 P.2d 1125, 1126 (Alaska 1978). If, viewing the case from that perspective, the movant is not entitled to judgment as a matter of law, the case must be reversed. In the discussion that follows I set forth Martech's version of the facts. If these facts are accepted as true, Ogden is not entitled to judgment on the grounds that the settlement agreement of November 10, 1988, released Ogden's obligation to pay Cummins for the automatic switchgear.

According to Martech's president, Ben Tisdale, there was a dispute between Martech and Ogden concerning whether Martech was obliged to supply the automatic switchgear. This dispute arose in July of 1988. Martech consistently took the position that the automatic switchgear was not necessary to the project, that Martech was not obligated to supply the automatic switchgear, and that Martech would not

---

**19.** *Cf. Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 110, 88 S.Ct. 733, 738, 19 L.Ed.2d 936 (1968) (describing the situation where one cannot be afforded complete relief as one where the defendant will bear shared liability solely or have to seek indemnification). Similarly, *H.H. Robertson Co. v. Lumbermen's Mutual Casualty Co.*, 94 F.R.D. 578, 579–80 (W.D.Pa.1982), cited by Martech, is distinguishable. In that case, the absent party was considered necessary because the defendant, if ruled against, could seek indemnification from the absent party. *Id.*

**20.** The cases cited by Martech supporting the proposition that persons jointly liable with the named defendant are necessary parties are inapposite. *See H & H Int'l Corp. v. J. Pellechia*

*Trucking, Inc.*, 119 F.R.D. 352, 354 (S.D.N.Y. 1988); *Brackin Tie, Lumber & Chip Co. v. McLarty Farms, Inc.*, 704 F.2d 585, 587 (11th Cir.1983); *See also* 3A *Moore's Federal Practice* ¶ 19.11, at 19–213 (2d ed. 1991) (discussing that joint obligors are commonly considered necessary although not indispensable parties).

**21.** Cummins has expressed a desire to add Ogden as a party. No issue that affects Cummins' ability to amend its complaint to sue Ogden is before this court.

Martech also alleged that Ogden would not be entitled to attorney's fees if we ordered that Ogden remained joined in the cause of action. Because of our holding, we need not address that issue.

pay for the automatic switchgear. This dispute continued through August and into September of 1988. Meanwhile Ogden's engineers were working directly with Cummins to design automatic switchgear. After the design was finalized, the parties resolved the dispute. Ogden agreed to pay for the automatic switchgear and directed Martech to place an order for it.[1]

By a letter dated November 3, 1988, Ogden terminated its contract with Martech, claiming six material breaches on the part of Martech and, alternatively, claiming the right to terminate the contract for Ogden's convenience. None of the claimed breaches entailed the previous switchgear controversy. The parties then negotiated a settlement agreement entitled Settlement Agreement Mutual Release and Waiver which was signed on November 10, 1988. Neither the switchgear nor Ogden's obligation to pay for the switchgear—which had not yet been delivered—was mentioned in the settlement agreement or in the discussions leading up to the settlement agreement. At some point after the settlement agreement was signed, Ogden declined to accept delivery of the automatic switchgear and refused to pay for it. Cummins sued Martech for the switchgear; Martech filed a third-party claim for indemnity against Ogden. The trial court granted Ogden's motion for summary judgment concerning Martech's third-party claim, presumably on the basis that the claim is barred by the settlement agreement.[2]

An important aspect of the settlement agreement is that it contemplates certain

---

1. The majority opinion states: "It was never formally resolved who would pay for or take ownership of the switchgear." Opinion at 1147. Whether this question was resolved is a fact in dispute. By asserting that the question was not resolved, the majority is taking Ogden's view of the facts rather than Martech's.

   Similarly, the majority rejects Tisdale's affidavit which states that "Ogden agreed to pay for the switchgear" on the grounds that it is uncorroborated and insufficiently detailed. *Id.* at 1149–50 n. 7. The majority states regarding Tisdale's affidavit "[t]o create a genuine issue of material fact there must be more than a scintilla of contrary evidence." *Id.* I agree that sometimes testimony may be so internally inconsistent and in conflict with the apparently reliable evidence offered by the proponent of a summary judgment motion that it may not serve to create a genuine issue of material fact and thus defeat summary judgment. *Yurioff v. American Honda Motor Co.,* 803 P.2d 386, 389 (Alaska 1990), was such a case. There the key issue was whether plaintiff's injury occurred on March 19 or March 20. The defendant moved for summary judgment on the ground that it took place on the 19th, offering clinic records, testimony that the records were accurate, and plaintiff's deposition testimony that the injury probably was suffered on the date indicated on the clinic records. In opposition, plaintiff cited another portion of his deposition where he had stated that he thought he was injured on March 20. We held that this self-contradictory statement was not evidence reasonably tending to dispute or contradict the "authentic documentation of the injury." *Id.*

   This case is unlike *Yurioff* for a number of reasons. First, Tisdale's affidavit is not self-contradictory. Second, the affidavit is not contradicted by documentary evidence. Third, the movant in this case, Ogden, did not attempt an evidentiary showing that there was no agreement that Ogden would pay for the switchgear. Instead, Ogden moved on the sole ground that regardless of any agreement the release clause of the settlement agreement barred Martech from litigating the switchgear dispute:

   > But for the Settlement Agreement, Mutual Release and Waiver, *Ogden would be obliged* to dispute the admissibility and credibility of Mr. Tisdale's undocumented assertion at the end of paragraph 12 that Ogden agreed to pay for the switch gear.

   Ogden's Reply to Martech's Opposition to Ogden's Motion for Summary Judgment at 6 (emphasis added).

   Ogden *admittedly* failed to address the factual issue concerning whether it had agreed to pay for the switchgear. Indeed, Ogden indicated how it would respond to the question if required to do so:

   > Ogden would contend, for example, that a directive, under the subcontract, was only that. It was not a promise to pay for work directed. A change order was a promise to pay. There was no change order.

   *Id.* at 6 n. 1. Ogden, however, offered no evidence to this effect in support of its motion. The proponent of a summary judgment motion has the initial burden of establishing the absence of genuine issues of material fact. *Ratcliff v. Security Nat'l Bank,* 670 P.2d 1139, 1142 (Alaska 1983). Thus, since Ogden—the movant—did not carry its initial burden of showing by admissible evidence that no agreement existed, the court errs by requiring Martech—the nonmovant—to produce evidence, a "scintilla" or otherwise, on the issue.

2. That was the sole ground presented in Ogden's memorandum filed in support of its summary judgment motion.

ongoing contractual obligations for both parties. The settlement agreement is, therefore, much more than merely a release of all claims. An agreement which both creates or confirms ongoing obligations and purports to release all past and future claims would, without more, be a contradiction in terms, because the parties would be left without any remedy for future breaches. The settlement agreement addresses this problem in two ways.

First, in the release clause, section 18 of the 22 section agreement, care is taken to limit application of the clause to listed claims and claims which are described in the past tense, that is, claims which "arose" on or prior to November 4, 1988. The key sentence of the release clause reads as follows:

> The parties agree that this settlement is the compromise of their disputed claims referred to above and hereby agree and acknowledge that any other claims against each other, known or unknown, which *arose* on or prior to November 4, 1988, or which *arose* pursuant to the contract for past or future losses, expenses or claims of any nature whatsoever (including any liability pursuant to the contract which might have arisen in the future had the contract not been terminated) are forever abandoned, and any right to assert such additional claims for any damages whatsoever are hereby forever waived and barred. (Emphasis added.)[3]

Second, as to past work or services which have not been billed and as to future services arbitration remedies are provided in case of a dispute.

Ogden was not called upon to perform its promise to pay for the automatic switching equipment until after the date of the settlement agreement. Thus, Ogden did not breach its promise to make payment for the switchgear until after the date of the agreement. Consequently, Martech's claim for indemnity did not arise on or prior to November 4, 1988, and therefore the claim was not released.[4] Instead, under paragraph 5 of the agreement, payment for the automatic switchgear was uninvoiced work for which Ogden was required to pay or, in the event of a dispute, to submit to arbitration.

In footnote 10, Op. at 1151 n. 10, the court acknowledges that this conclusion is correct: "Indeed, an agreement by Ogden to purchase the switchgear would have made the switchgear an item subject to invoice and thus arbitrable under paragraph 5(d) of the settlement." Since, under the view of the transaction most favorable to Martech, Ogden did agree to purchase the switchgear, we must, for summary judgment purposes, treat the switchgear as subject to resolution under paragraph 5 of the settlement agreement. This necessarily means that the claim has not been released.

**3.** The majority opinion quotes language from the release as follows:
1. "All liability from whatever damage"
2. "any damages whatsoever"
3. "claims of any nature whatsoever"
4. "arising from or relating to the subject contract"
5. "known or unknown, arising from or relating to the subject contract."

Op. at 1151–52 & n. 11. However, use of the verb "arose" places these seemingly broad phrases in the past tense with November 4, 1988, as the reference date. The court acknowledges the parties' use of the past tense, Op. at 1152 n. 12, but fails to give effect to the verb "arose" in construing the release language. The court points out that the two clauses in which "arose" appears are joined by the disjunctive "or." Since *both clauses* are framed in the past tense, however, severing the clauses does not alter the tense of the release sentence. Yet, use

of the disjunctive leads the court to conclude that "[t]he release then specifically encompasses 'claims of any nature whatsoever (including any liability pursuant to the contract which might have *arisen* in the *future* had the contract not been terminated).' (Emphasis added.)" *Id.* From its use of emphasis, I take the court to rely in part on the highlighted parenthetical language in support of its reading of the release. Even the parenthetical clause, however, only further specifies the claims that are released, which claims are already limited by the use of the past tense.

**4.** As a claim for indemnification, Martech's claim does not actually arise until Martech is made to pay Cummins. *See Providence Washington Ins. Co. v. McGee,* 764 P.2d 712, 715 (Alaska 1988) (claim for contribution does not arise until claimant is made to pay more than his or her proportional share).

On remand there are various courses of action which might be taken to resolve the critical question of whether there was an agreement by Ogden to purchase the switchgear. The trial court could order the parties to arbitrate this question.[5] Alternatively, since neither party has asked for arbitration, the question might be resolved after a trial by the court, either with or without a jury. As these options have not been briefed, I express no opinion on them. It seems plain, however, that the release provisions of the settlement agreement do not cover Ogden's alleged agreement to pay for the automatic switchgear and that summary judgment on this basis was erroneously entered.

What remains is the court's suggestion that Martech may be barred—by some variant of the doctrine of res judicata—from litigating its claim because the claim was not arbitrated. Op. at 1152–53 n. 13. A sufficient answer to this contention is that Martech's claim for indemnity is not a mandatory subject for arbitration until it ripens, that is until and unless Martech is required to pay Cummins. This view is supported by much authority in the litigation context.[6]

For the above reasons, the judgment of the superior court should be reversed and this case should be remanded for further proceedings.

**5.** As the majority opinion notes, Martech contended before the trial court that its claim was not subject to arbitration. However, Martech did not burn its bridges on this issue, as it also stated: "If this court ... decides the indemnification issue should be submitted to arbitration, the court can sever the indemnity action from the underlying action...."

**6.** It is generally accepted that the doctrine of res judicata bars only those claims that *could have been brought* at the time of prior litigation (i.e., only those claims that had arisen), *DeNardo v. State*, 740 P.2d 453, 455–56 (Alaska), *cert. denied*, 484 U.S. 919, 108 S.Ct. 277, 98 L.Ed.2d 239 (1987), and that a claim for indemnification does not arise until the party seeking indemnification becomes liable on the underlying obli-

gation. *See, e.g., Borchard v. Wefco, Inc.*, 112 Idaho 555, 559, 733 P.2d 776, 780 (1987); *EBI/Orion Group v. State Compensation Ins. Fund*, 240 Mont. 99, 782 P.2d 1276, 1279 (1989); *Aetna Casualty & Sur. Co. v. Aztec Plumbing Corp.*, 106 Nev. 474, 796 P.2d 227, 229 (1990); *Travelers Ins. Co. v. L.V. French Truck Serv.*, 770 P.2d 551, 555 (Okla.1988); *Perry v. Pioneer Wholesale Supply Co.*, 681 P.2d 214, 218 (Utah 1984). A Michigan court and a Georgia court have applied these accepted rules together in concluding that litigation prior to the accrual of an indemnification claim does not bar litigation of the indemnification claim. *Ranger Constr. Co. v. Robertshaw Controls Co.*, 158 Ga.App. 179, 279 S.E.2d 477, 480 (1981); *Beck v. Westphal*, 141 Mich.App. 136, 366 N.W.2d 217, 221 (1984).