**ALYESKA PIPELINE SERVICE COMPANY, an Alaska corporation, Petitioner,**

v.

**Thomas SHOOK, and all other similarly situated employees, Respondents.**

No. S–8015.

Supreme Court of Alaska.

April 16, 1999.

Charles P. Flynn, Burr, Pease & Kurtz, Anchorage, and Mark H. Epstein, Munger, Tolles & Olson, Los Angeles, California, for Petitioner.

Walter H. Garretson, Walter H. Garretson, P.C., Anchorage, and Stephen L. Nourse and C. Scott Penner, Carney Badley Smith & Spellman, Seattle, Washington, for Respondents.

Before: MATTHEWS, Chief Justice, COMPTON, EASTAUGH, FABE, and BRYNER, Justices.

*OPINION*

EASTAUGH, Justice.

## I. *INTRODUCTION*

Under Alaska law, an employee may not privately settle a wage and hour claim for a sum less than the damages required by the Alaska Wage and Hour Act (AWHA). In exchange for a large employment severance payment, Thomas Shook released his former employer, Alyeska Pipeline Service Company, "from any and all claims ... arising from his employment or as a result of this separation of employment." When Shook later sued Alyeska claiming AWHA violations, Alyeska moved for summary judgment on the theory the severance payment fully offset, and thus extinguished, Shook's AWHA claim. The superior court denied Alyeska's motion. We reverse. We conclude that the release encompassed Shook's claims, and that, because it substantially exceeded the maximum he could have recovered under the AWHA, the severance payment fully satisfied any potential AWHA award. It therefore

required dismissal of his AWHA claim. We remand for entry of judgment for Alyeska.

## II. *FACTS AND PROCEEDINGS*

Alyeska employed Shook from August 1982 until March 1995. From 1987 to 1995, Shook was a Senior Business System Analyst, classified by Alyeska as an exempt employee not eligible for overtime pay under the AWHA. The AWHA does not apply to "an individual employed in a bona fide executive, administrative, or professional capacity or in the capacity of an outside salesman or a salesman who is employed on a straight commission basis."[1]

Alyeska terminated his employment in March 1995 as part of a company-wide reduction in force. Shook signed a document entitled "Separation Agreement and General Release," and received a lump sum severance payment of $141,496.73 from Alyeska as part of his involuntary severance package.

In May 1995 Shook brought a class action complaint on behalf of himself and other current and former Alyeska employees, alleging that Alyeska had violated the overtime provisions of the AWHA. He contended that he and all of Alyeska's present and former employees employed in an "executive, administrative, or professional capacity" had been improperly classified as exempt, and that they were entitled to back overtime pay, plus liquidated damages, penalties representing ninety days' lost wages, and attorney's fees.

The superior court granted class certification "only on the question of whether Alyeska employees subject to suspension without pay were properly classified as exempt." Alyeska moved for summary judgment against Shook individually, assuming for purposes of its motion that Shook was correct on the merits of his AWHA claim. Alyeska introduced evidence of the general release Shook signed when he separated. Alyeska asserted that it was entitled to set off its lump sum severance payment against any recovery that Shook might obtain. Alyeska calculated that Shook's maximum potential recovery from a successful AWHA case was about $71,000, including statutory liquidated

1. AS 23.10.055(9).

damages and prejudgment interest. Alyeska's calculation made no allowance for an award of attorney's fees. Reasoning that its severance payment of $141,496.73 exceeded Shook's maximum potential AWHA recovery, Alyeska urged the court to dismiss Shook's claim, and to give plaintiffs' counsel thirty days to name a new class representative.

Shook did not argue that he could potentially recover more than $71,000 under the AWHA or that there was any genuine dispute about his maximum potential AWHA recovery. He instead argued that there were genuine fact disputes about the scope of the release and what part of the severance payment was intended to discharge AWHA claims.

The superior court denied Alyeska's motion. It found that the release did not necessarily cover Shook's AWHA claim, and that Alyeska was not clearly entitled to a setoff. It also found "no indication that either Shook or Alyeska contemplated that Shook had a potential claim for unpaid overtime wages." We granted Alyeska's petition for review of the denial of its summary judgment motion.

## III. *DISCUSSION*

### A. *The Purpose of the Payment*

█ The separation agreement Shook signed contains language that "releases and discharges Alyeska ... from any and all claims ... arising from [Shook's] employment."[2] Alyeska argues that the release covers Shook's AWHA claim, because it is a claim arising from Shook's employment.[3] According to Alyeska, the release language is unambiguous; it argues that "Alyeska paid Plaintiff over $140,000 in return for his promise not to sue Alyeska over *anything* relating in any way to his employment."

Shook maintains that, in construing the release, the court should consider extrinsic evidence of the parties' intentions regarding the AWHA claim. In his superior court affidavit, Shook affined that he had not previously asserted any AWHA claims and had not discussed with Alyeska the waiver of such claims before he signed the agreement. He argues that a question of fact remains about whether he expected or intended to relinquish his AWHA claims. He also asserts that, because he and Alyeska could not have settled their AWHA claims without court approval, he would not have expected the release to cover them.

The question whether the release encompassed Shook's AWHA claims is relevant to deciding whether Alyeska is entitled to offset any part of the severance payment against Shook's AWHA claims. Alyeska does not argue that the release is an absolute bar to Shook's claims.

2. The *Separation Agreement and General Release* states, in part:
EMPLOYEE accepts the benefits specified herein in full payment and satisfaction of all his rights and interests relating to his employment with ALYESKA and, in consideration therefore, EMPLOYEE hereby irrevocably releases and discharges ALYESKA ... from any and all claims ..., liabilities, demands and causes of action, known or unknown, fixed or contingent, which EMPLOYEE may have or claim to have arising from his employment or as a result of this separation of employment.

3. *AWHA claims are derived from Alaska statutes.* AS 23.10.060 provides, in part:
*Payment for overtime.* (a) An employer who employs employees engaged in commerce or other business, or in the production of goods or materials in the state may not employ an employee for a workweek longer than 40 hours or for more than eight hours a day. This section does not apply to the employment of a person acting in a supervisory capacity.

(b) if an employer finds it necessary to employ an employee in excess of 40 hours a week or eight hours a day, compensation for the overtime at the rate of one and one-half times the regular rate of pay shall be paid.
(c) This section is considered included in all contracts of employment.
AS 23.10.110(a) provides, in part: "An employer who violates ... AS 23.10.060 is liable to an employee affected in the amount of ... unpaid overtime compensation ... and, except as provided in (d) of this section, in an additional equal amount as liquidated damages."
AS 23.05.140(d) provides:
If an employer violates (b) of this section by failing to pay within three working days of termination, the employer may be required to pay the employee a penalty in the amount of the employee's regular wage, salary, or other compensation from the time of demand to the time of payment, or for 90 working days, whichever is the lesser amount.

■ The superior court found no indication that the parties contemplated Shook's possible AWHA claims, and found no reasonable relationship between the severance payment and Alyeska's potential liability under the AWHA. The court concluded that the severance payment "was not paid to settle a specific overtime claim."[4]

■ We interpret contracts so as to "give effect to the reasonable expectations of the parties."[5] We give effect to a broad release even if the parties did not specifically list all of their possible claims. For example, in *Martech Construction Co. v. Ogden Environmental Services, Inc.*,[6] we noted the broad language of a release executed by an equipment supplier and subcontractor.[7] The parties there purported to release each other "fully, finally, and completely from all liability for whatever damage, known or unknown, arising from or relating to the subject contract."[8] We characterized the agreement as "a complete washing of the hands between the parties using as soap blatantly broad language to cover all possible causes of action."[9] We therefore found it irrelevant that, at the settlement negotiations, the parties had never discussed the equipment that became the subject of the dispute: "The

broad language used implies that claims not specifically contemplated are settled."[10]

Similarly, we give effect to the broad language of indemnity agreements, even as against the indemnitee's own negligence.[11] We have, however, refused to enforce indemnification agreements that would tend to promote a breach of duty to the public safety.[12]

The agreement Shook signed purports to release Alyeska "from any and all claims (other than claims for the payments provided for under this AGREEMENT), liabilities, demands and causes of action, known or unknown, . . . arising from [Shook's] employment or as a result of this separation of employment." The parties' broad language reveals an intention to resolve all possible claims arising from Shook's employment; any claims not specifically reserved must be considered settled by the agreement.[13]

■ Shook does not argue that settlement of employment-related claims falls into the public duty exception articulated in *State v. Korean Air Lines*.[14] We read that exception to be limited to public safety, an interest of little or no pertinence here given the primary legislative purposes of the AWHA.[15] In any event, the question for us is not whether to give effect to the release, but whether the

---

4. We review a superior court's grant of summary judgment de novo. *See Nielson v. Benton*, 903 P.2d 1049, 1052 (Alaska 1995). Summary judgment is proper when the materials submitted show that "there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." Alaska R. Civ. P. 56(c). We interpret a release in the same manner as any other contract. *See Schmidt v. Lashley*, 627 P.2d 201, 204 n. 7 (Alaska 1981). We review de novo "a trial court's interpretation of a contract in which the underlying facts are undisputed." *Oaksmith v. Brusich*, 774 P.2d 191, 195 (Alaska 1989).

5. *Wright v. Vickaryous*, 598 P.2d 490, 497 (Alaska 1979).

6. 852 P.2d 1146 (Alaska 1993).

7. *See id.* at 1151–52.

8. *Id.* at 1148.

9. *Id.* at 1152.

10. *Id.*

11. *See, e.g., Manson–Osberg Co. v. State*, 552 P.2d 654, 659 (Alaska 1976) ("The better rule in modern cases is that the unambiguous language of an indemnity clause as 'reasonably construed' should be given effect, even if it does not contain words specifying indemnity for the indemnitee's own negligence.") (citations omitted).

12. *See, e.g., State v. Korean Air Lines Co.*, 776 P.2d 315, 319 (Alaska 1989) (concluding "that to require indemnification for the State's own negligence on the [airport] runways and taxiways would run afoul of the State's other obligations to the public").

13. *See Martech Constr. Co. v. Ogden Envtl. Servs. Inc.*, 852 P.2d 1146, 1152 (Alaska 1993).

14. 776 P.2d at 317–19.

15. The purposes of the AWHA are to "compensate those who labored in excess of the statutory maximum number of hours for the wear and tear of extra work and to spread employment through inducing employers to shorten hours because of the pressure of extra cost." *Jones v. Otis Eng'g Corp.*, 757 P.2d 50, 53 (Alaska 1988) (citations omitted).

release language reveals why Alyeska paid Shook over $140,000. The agreement recites receipt of consideration for the release. Shook's affidavit does not assert that he understood that the release would not encompass AWHA claims; it asserts only that he never "had any discussion with anyone from Alyeska" that he was waiving AWHA claims by signing the agreement. Absent any evidence of a reservation of Shook's AWHA claim, we must conclude that he accepted the severance payment in consideration for his release of all of his employment-related claims, including any potential AWHA claim. It is significant that Shook has not claimed that he has any employment-related claim other than his AWHA claim, or that he was aware of any other claim when he accepted the payment.

We therefore conclude that the payment was intended to encompass any AWHA claim Shook had.

### B. *Private Settlement of AWHA Claims*

■ The parties dispute whether an employer and employee can privately settle an AWHA claim. Their arguments focus on the effect of *McKeown v. Kinney Shoe Corp.*[16]

That opinion concerned a class action for alleged AWHA violations. Kinney offered monetary settlements to the potential class members in exchange for waivers of "any rights [the employees] might have against Kinney ... for all of the claims which were or could have been asserted in the class action lawsuit [including] ... unpaid overtime, bonuses and certain deductions from paychecks."[17] We held that "permitting private settlement of liquidated damages claims under the AWHA is contrary to the strong policy behind the AWHA and its liquidated damages provisions," and declared void the settlements purporting to compromise AWHA claims for unpaid overtime.[18] We also stated, "[o]f course, Kinney may offset damages ultimately awarded to particular employees by any amount that it has already paid to those employees in its attempt to settle their claims."[19]

Alyeska argues that *McKeown* permits Alyeska to set off the separation payment against any recovery Shook could obtain. Alyeska reasons that, because the separation payment greatly exceeds Shook's maximum possible recovery, including interest and liquidated damages, it "completely extinguishes" his claim.

Shook responds that "the offset in *McKeown* was for the money the settling employees had received for the *very* claims that were in dispute in that lawsuit." He argues that *McKeown* is distinguishable from his case because "there is no indication that Alyeska or the separated employees considered potential claims based on AWHA violations when they entered into the severance agreements."

The superior court distinguished *McKeown* from Shook's case for the reasons Shook suggested. The court found that Alyeska made its severance payment "for a number of reasons, including maintaining good will with [Alyeska's] employees generally." The superior court therefore concluded that Alyeska was not clearly entitled to a setoff.

When Shook and Alyeska signed the agreement, the AWHA contained no provision that would have expressly rendered unenforceable a settlement agreement not approved by the Department of Labor or the court. The AWHA now has such a provision, AS 23.10.110(j). It applies to written settlements entered into after August 21, 1995. Shook and Alyeska entered into their agreement on April 18, 1995. Alaska Statute 23.10.110(j) therefore does not apply to the Shook–Alyeska agreement.[20]

Our resolution of the public policy question turns on the rationale that controlled *McKeown*. *McKeown* contemplated a settlement in which the employee received less

---

**16.** 820 P.2d 1068 (Alaska 1991).

**17.** *Id.* at 1069.

**18.** *Id.* at 1071.

**19.** *Id.* at 1068 n. 4.

**20.** *See Stephan & Sons, Inc. v. Municipality of Anchorage,* 629 P.2d 71, 78 & n. 19 (Alaska 1981) ("An agreement valid when made generally cannot be rendered invalid by a subsequent act of the legislature.").

than the full amount due. We there explained:

> If the liquidated damages available under the AWHA were meant mainly to compensate the wronged employee, one might reasonably argue that compromise or settlement by the wronged employee might be appropriate. Because the liquidated damages are not compensatory, an employee's capacity to compromise or settle *for a lesser amount* should be extremely restricted.[21]

By contrast, the case at bar did not arise out of a settlement for less than the amount prescribed by the AWHA. Shook received about twice his maximum possible AWHA recovery, including compensatory and liquidated damages and interest. Assuming Shook also was entitled to recover costs and reasonable attorney's fees,[22] we can safely say that the amount he received substantially exceeded his total potential AWHA recovery. Although Shook suggests that a factual issue remains regarding the value of his AWHA claim, he does not explain what the issue is or challenge Alyeska's calculations. He was not asked to accept, and did not accept, less than the full amount he might have recovered under the AWHA. Assuming that the Fair Labor Standards Act (FLSA) is a model,[23] we have not found any case that declined to enforce a settlement for an amount that substantially exceeded the full amount recoverable under the FLSA. We hold that the public policy reflected in the AWHA and *McKeown* is not offended when an employee unquestionably receives the full amount the AWHA requires. We also note that, at oral argument before us, Shook's attorney forthrightly conceded that Shook's wage and hour claim was his only employment-related claim. Shook does not argue that when his employment terminated Alyeska had any duty to pay him anything in addition to all amounts due under the AWHA. Because Shook had no other potential employment-related claims

against Alyeska, we must conclude that the entire severance payment can be attributed to his wage and hour claim and, thus, that it fully satisfies the AWHA's damages requirements. We consequently agree with Alyeska that the resulting setoff extinguishes Shook's AWHA claim.

## IV.  CONCLUSION

We REVERSE the order denying summary judgment to Alyeska and REMAND for entry of judgment for Alyeska on Shook's individual claim. This result does not require dismissal of the class action. The class should have opportunity to substitute a new class representative.

BRYNER, Justice, with whom FABE, Justice, joins, dissenting.

Although I agree that Alyeska may be entitled to offset some, or conceivably even all, of Shook's severance payment, I do not agree that the entire amount of his severance should be automatically available for offset. In my view, the question of any potential offset contains unresolved factual issues.

The severance agreement required Shook to release Alyeska "from any and all claims, ... liabilities, and demands and causes of action, known or unknown, ... arising from [Shook's] employment or as a result of this separation of employment." As the court recognizes, *McKeown v. Kinney Shoe Corp.*[1] makes it clear that the agreement's inclusion of one type of potential claim—an AWHA claim—is impermissible. The narrow question presented is what portion of Alyeska's severance payment can be ascribed to this impermissible purpose.

Absent proof that Shook had any other potentially viable claims against Alyeska, the court holds that his entire severance payment may be presumed to cover his AWHA claim. But this holding takes an unrealistic

---

**21.** *McKeown,* 820 P.2d at 1070 (emphasis added).

**22.** *See Grimes v. Kinney Shoe Corp.,* 938 P.2d 997, 998 (Alaska 1997); *see also* AS 23.10.110(c), (e).

**23.** The AWHA has similar purposes to the FLSA and is based upon it. *See Webster v. Bechtel, Inc.,* 621 P.2d 890, 895 (Alaska 1980).

**1.** 820 P.2d 1068, 1069 (Alaska 1991) (holding that "employer and employee may [not] privately settle claims for liquidated damages arising under the Alaska Wage and Hour Act").

view of what Alyeska paid for. The court fails to recognize that Alyeska's severance plan did not prepay future damages to its employees for their existing valid claims. Rather, the plan bought Alyeska protection against uncertainty—insurance against the risk of many different kinds of future claims that were "known or unknown" to its employees at the time of severance.

That only one of these claims eventually materialized in Shook's case, and that this claim is no longer within the terms covered by the severance package, hardly justify Alyeska in recharacterizing its entire severance payment as an advance deposit on Shook's AWHA claim. With respect to other "known or unknown" potential claims against which Alyeska sought protection, it got precisely what it paid for when it made the payment—security against the possibility of a claim by Shook. That these other risks have not actually materialized and may no longer be of concern to Alyeska cannot justify the company's claim that its payment to insure against these risks was, in retrospect, unnecessary and should therefore now be credited against Shook's potential AWHA recovery.

In my view, a more realistic approach in circumstances like these—where one narrow aspect of a global settlement and release is found invalid as against public policy—would be to hold that a right of offset arises as to the prorated amount of the total settlement payment that is attributable to the specific provision that is declared invalid and unenforceable. Applying this approach to Shook's case would determine the portion of the total severance payment for which Alyeska could fairly be said to have received nothing, and for which it accordingly should be entitled to reimbursement or offset.

Shook's right to pursue his AWHA claim should not depend on his ability to prove the non-existence of an offset. Rather, because Alyeska has the burden of proving both the existence of an offset right and the value of the offset, it should have to establish the

portion of Shook's overall settlement that was, at the time of payment, fairly allocable to the risk of a potential AWHA claim. If the manner in which Alyeska calculated the amount to be offered in its severance package precludes the company from prorating specific portions of the total settlement payments to particular categories of potential claims, then, in my view, the result would be a failure of proof, and Alyeska would be entitled to no offset at all. Only if Alyeska established that its severance package was actually designed to protect against nothing but the risk of AWHA claims should the entire settlement payment become available to offset a future AWHA claim.

Because the record in this case does not establish what portion, if any, of Shook's total settlement should be available to offset any future AWHA recovery, I would hold that summary judgment based on a potential offset is not justified.

In any event, even accepting the court's holding that the entire settlement is available to offset any AWHA recovery, I do not agree with the conclusion that Shook's right to sue should be commensurate with his ability to prove the potential for a net overtime damage award. It is undisputed that Shook's agreement with Alyeska is unenforceable to the extent that it includes an unapproved settlement of potential AWHA claims. The strong public interest in vindicating AWHA's policy against unapproved settlements,[2] coupled with the corresponding risk that a strict rule of dismissal might discourage actions by potential claimants, strongly favors allowing Shook to prosecute his cause of action, even without proof of a potential net recovery.

Particularly in the context of a class action that will continue regardless of Shook's participation, the trial court could reasonably conclude that Shook's dismissal as a class representative was unjustified. Alaska Civil Rule 23(c) gives trial courts broad discretion to define the membership of classes and subclasses, to segregate particular factual and legal issues for case-by-case determination,

---

**2.** *See id.* at 1070 ("If the employer entices the private actor—the unpaid employee—to settle a legitimate claim, a violating employer may then escape without an adjudication of liability and without punitive sanction. An interpretation of the AWHA that would permit such escape countermands the very purpose of the liquidated damages provision.").

and to establish the order in which various questions should be considered and determined. Shook's forced dismissal on summary judgment will do little more than complicate this class action procedurally and cause remaining class members to sustain added expenses. It may also encourage the assertion of additional case-by-case offset motions as a tactical strategy to delay or defeat progress in the class action. Since the trial court can address offset issues in individual cases after the merits of the AWHA class action are determined, I would find no error.

Accordingly, I dissent.