Douglas K. BARRY, Appellant,

v.

UNIVERSITY OF ALASKA, Appellee.

No. S–10178.

Supreme Court of Alaska.

Feb. 27, 2004.

John E. Havelock, Law Offices of John E. Havelock, Anchorage, for Appellant.

Mark E. Ashburn, Ashburn & Mason, P.C., Anchorage, for Appellee.

Before: FABE, Chief Justice, MATTHEWS, EASTAUGH, BRYNER, and CARPENETI, Justices.

*OPINION*

MATTHEWS, Justice.

## I. INTRODUCTION

The question presented is whether a preretirement release bars an employee's claim for a later breach of an employer's promise to recognize that the employee had twenty years of allowable service. We answer this question in the negative because a release cannot govern the enforceability of a promise to be performed after the release.

## II. FACTS AND PROCEEDINGS

When his retirement pay fell short of the amount he expected, Douglas Barry sued both the University of Alaska and the Teachers' Retirement System. We are concerned on appeal only with his claim against the

University. Barry's complaint presented three legal theories against the University: breach of contract, negligent record keeping, and promissory estoppel. In the paragraph that follows we summarize the allegations of the complaint.

Barry was employed by the University between 1976 and July 1, 1997, but his employment was not continuous. During this period Barry held faculty and non-faculty positions in five different academic disciplines, with four research centers and institutes, and with the University's educational television network. In 1996 the University authorized a retirement incentive program (RIP) under which some University employees who were eligible for retirement were offered a special benefit of up to three years additional retirement credit. Barry contacted Amy Clifford, the University benefits coordinator, to make sure that he had twenty years of allowable service so he could take full benefit of the RIP program. He was assured by her that he would have twenty years of service if he retired in the summer of 1997. Relying on data supplied by the University, Barry applied for RIP benefits. When Barry's application was initially rejected, Barry appealed within University channels. While awaiting the outcome of the appeal he again sought and received confirmation from the University that he had accumulated the necessary twenty years of service for retirement. After negotiations, the University agreed that Barry was entitled to RIP benefits. Consequently, Barry retired based on an understanding that the University would assign him twenty years of actual service credit and three additional years of RIP credit. Barry signed a release as a part of this arrangement. Subsequently the University determined that it had overstated Barry's term of actual service. When his retirement benefits were recalculated they fell short of the amount he expected by some $816 per month. Barry acknowledged that his service "may have been overstated by as much as a year" but claimed that he had "additional service with the University and outside credit which he had not put forward for credit so that the amount of creditable time which [he] had with the University is in doubt." Barry would not have retired if he

had known that his retirement benefits were going to be reduced. In order to retire he borrowed money to raise approximately $35,000 to "buy back" retirement time because he had previously withdrawn sums from his retirement account to meet financial contingencies.

The University answered, admitting that "there was an incorrect notation of service data in some information maintained by the University concerning [Barry's] employment at the University." The University also explained the RIP program in its answer as follows:

> Defendant admits that the RIP was an inducement by the State of Alaska to encourage employees to consider retirement. The State program offered an enhanced retirement benefit without having to put in additional years of work. If a State employee had 20 years of service, the program added it to the retirement benefit available to the employee.

The University denied many of the other allegations of Barry's complaint and pled several affirmative defenses including the defense that Barry's claims were barred by the release.

The University moved for summary judgment as to all of Barry's claims. The sole basis for the motion was the release. The University explained the background of the release:

> Barry applied for the RIP, but his application was denied by [the University] because [the University] believed that it would not be able to demonstrate any cost savings as required by the RIP.... Barry stated his intent to appeal the decision by [the University] to reject his RIP application....
>
> Counsel for [the University], Jean Sagan, engaged in settlement discussions with [Barry's counsel] concerning Barry's intended appeal of [the University's] decision to reject Barry's RIP application. Ms. Sagan proposed that if Barry signed a release of all claims relating to or arising out of his employment relationship with [the University] prior to July 1, 1997, then [the University] would take the extraordi-

nary administrative steps necessary to ensure that Barry's position was eligible to participate in the RIP. The proposed resolution would also relieve [the University] from the costs and the inconveniences associated with Barry's pending appeal and with any other litigation Barry might file against [the University] associated with either his employment or his retirement from [the University].

The release provided in relevant part:

In consideration of the University of Alaska's taking such administrative steps as are necessary to enable the position presently held by Dr. Douglas K. Barry to qualify under the University's current statutorily authorized Retirement Incentive Program, Dr. Barry hereby releases the University of Alaska ... from any and all claims ... for damages, costs, expenses or compensation for or on account of any damage, loss or injury ... whether developed or undeveloped, resulting or to result, known or unknown, past, present, or future, arising out of or directly or indirectly or in any way connected with his employment with the University prior to July 1, 1997, including but not limited to those relating to tenure, retirement, or other employee benefits....

The University argued that the comprehensive terms of the release covered Barry's claims and that a reasonable person in Barry's position would have so understood the release.

Barry opposed the motion for summary judgment. He argued, "the parties intended that the release, taken as a part of the agreement to retire, meant that Dr. Barry was eligible to retire with twenty years of service and three years of RIP service," and that "neither party contemplated that Dr. Barry was foregoing his right to sue on the contract of retirement itself." Barry contended that if the release had the effect that the University claimed, the University could have changed its position after he retired and he would have been without a remedy: "If the University is right in its interpretation of the Release, then the University could have reduced Dr. Barry's retirement record to zero, causing his pension to be terminated by

TRS." Barry's opposition is summed up in the following paragraph:

A release is intended to reflect the intent of the parties. The test of the enforceability of a release is whether, at the time of signing the release, the releasor intended to discharge the claim which was subsequently discovered. All the facts and circumstances surrounding execution of the release are pertinent to determining this intent. Also the determination of whether a reasonable person in the circumstances then existing would have had such an intent. *Witt v. Watkins*, 579 P.2d 1065 (Alaska 1978). Reposing the question, would a person retiring from the University have reasonably intended that the release would prevent him or her from suing if the University subsequently told the TRS to reduce the benefit expected at the retirement?

Barry's opposition also contained a cross-motion for summary judgment.

The University replied to Barry's opposition to its motion for summary judgment and responded to his cross-motion. In reply, the University stressed the literal language of the release: "The language of the Release is plain and direct; it provides that Barry releases [the University] from all claims related to his retirement benefits." In response to Barry's cross-motion for summary judgment, the University filed an affidavit of Amy Clifford, the University benefits coordinator, that took issue with Barry's account of their dealings. The University urged that there were "genuine factual disputes as to the facts relating to the substance of each of the three claims set forth by Barry in his complaint."

In response to the University's opposition to the cross-motion, Barry filed a reply that effectively withdrew it. He concluded that, in light of Clifford's affidavit, "there are indeed questions of fact that prevent either party from obtaining summary judgment."

Superior Court Judge John Reese granted the University's motion for summary judgment. Noting that Barry was represented by counsel at the time that he signed the release and that the release was clear and unambiguous, the court concluded: "All of the claims raised by [Barry] are directly

correlated to his retirement benefits or to his employment with [the University] prior to July 1, 1997, and can not as a matter of law be litigated now."

The court also observed that in a proceeding involving Barry's appeal from an adverse decision of the Teachers' Retirement Board, the reviewing court, in interpreting board findings, had concluded that Barry should have known that the misadvice he received was incorrect. The court observed that it would be inconsistent with this decision to allow Barry's claims to proceed.

## III. DISCUSSION

### A. Standard of Review

■ Grants of summary judgment are reviewed de novo and will be affirmed if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law.[1] Questions of law including the interpretation of contracts are also reviewed de novo.[2]

### B. Discussion

On appeal Barry makes two claims. He asserts first that the release does not preclude him from asserting claims against the University for breaching the terms of the retirement agreement. Second, he argues that he was entitled to summary judgment against the University based on his claims of negligent record keeping and false assurances that he had received from University personnel that he would have twenty years of allowable service independent of the RIP program.

■ Barry's second claim is without merit. The University correctly argues that in the superior court Barry conceded that questions of fact prevented him from obtaining summary judgment on his cross-motion. Since he abandoned pursuit of his cross-motion it is waived for purposes of this appeal.[3]

■ With respect to Barry's first argument concerning the release, Barry challenges the application of the release both on factual and legal grounds. His factual argument is that whether the release governed the University's conduct in taking the position after he retired that he had less than twenty years of allowable service depends on whether at the time of signing the release a reasonable person in his position would have understood that subsequent conduct by the University of this nature would be encompassed by the release. He contends that at least a question of fact exists on this point. His legal argument is that subsequent conduct breaching the agreement could not have been contemplated as coming within the terms of the release.

In response, the University relies on the terms of the release that encompass all claims relating to Barry's retirement benefits. In addition, it stresses that Barry was at all times represented by counsel and thus the release was not the result of disproportionate bargaining power. The University contends that even if Barry had an agreement with the University to retire for a specific benefit "the relevant fact is that such an agreement with the University would necessarily relate to the time period prior to Barry's retirement on July 1, 1997," and therefore any claim concerning such a contract would be barred by the release. The University also denies any such agreement: "It was never part of any agreement with the University that Barry would receive a certain monthly retirement from TRS or that he would retire with any particular amount of service credit."

■ In order to be entitled to summary judgment the moving party must establish that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law.[4] The summary judgment

1. *Therchik v. Grant Aviation, Inc.,* 74 P.3d 191, 193 (Alaska 2003) (citation omitted).

2. *Id.*

3. *Tybus v. Holland,* 989 P.2d 1281, 1285 (Alaska 1999) ("We will not consider arguments that

parties fail to raise in the lower court, let alone arguments that they have conceded below, unless the trial court committed plain error.").

4. Alaska R. Civ. P. 56(c).

movant "has the entire burden of proving that his opponent's case has no merit." [5]

The University moved for summary judgment based only on its affirmative defense that the release barred Barry's claims. Had it moved for summary judgment on the merits it would have had to show the absence of genuine issues of fact by presenting evidence negating Barry's claim that an agreement was made that he would be credited with twenty years of service.[6] A motion on the merits would have alerted Barry to the need to present evidence showing such an agreement. But this process has not taken place.

Since they have not been negated, we must assume as true the allegations in the complaint that an agreement was made that Barry would be credited with twenty years of allowable service.[7] We make this assumption despite the University's present contention in its brief on appeal that there was no such agreement. The University did not undertake to refute the allegations of the complaint in its motion. It cannot on appeal convert a summary judgment motion that was based on an affirmative defense—concerning which the truth of most of the allegations of the complaint would be irrelevant— to a motion challenging the truth of those allegations. Further, in response to Barry's cross-motion for summary judgment, the University conceded that there were genuine issues of material fact as to "whether there was an agreement between [the University] and Barry that [the University] would report to TRS that Barry had twenty years of credit service at [the University] without the benefit of the three RIP years."

Assuming then an agreement that the University would credit Barry with twenty years of actual service, the release could not immunize the University from a suit to enforce such an agreement. The University's promise was to be performed after the date of the release and the contract would be illusory if it were governed by the release. No reasonable person in Barry's position would have understood the release language to bar suit for a breach of the contract occurring after the release.

An example can readily illustrate this. We can assume that parties to a contract settle a dispute in exchange for a release by the first party, and a promise by the second to pay the first $3,000 per month for life. If the second party after the settlement decides to pay only $2,000 a month, that party would not be insulated by the release from a suit by the first party for breach of the contract. Such a result would be contrary to the concept that a contract that governs future conduct is binding and enforceable.[8]

For these reasons we conclude that the University's motion for summary judgment was erroneously granted.

The trial court's reference to the reviewing court's conclusion in the administrative appeal by Barry from the adverse decision of the Teachers' Retirement Board that Barry " 'should have known' that the misadvice was incorrect" requires additional comment. The actual language of Superior Court Judge Fred Torrisi's opinion on appeal from the decision of the Teachers' Retirement Board is, "Here, it could be said that Dr. Barry 'should have known' that the misadvice was incorrect, and that is what the Board found." The actual findings of the board on which Judge Torrisi bases this conclusion exonerate the Division of Insurance, but do not purport to address the relative fault of Barry and the University, as Barry's case against the Uni-

5. *Braund, Inc. v. White*, 486 P.2d 50, 54 n. 5 (Alaska 1971).

6. *See, e.g., McWilliams v. Bolstridge*, 644 P.2d 240, 241 (Alaska 1982) ("In order to meet their initial burden of showing that the counterclaim was without merit, [the movants] had to negate it, as, for example, by filing an affidavit ... that no such agreement was made. This they failed to do.").

7. *See, e.g., Jones v. Wadsworth*, 791 P.2d 1013, 1015 (Alaska 1990). Under review was a grant of summary judgment in favor of the defendant on the affirmative defense that the tort statute of limitations had run. We held that "for purposes of this appeal" we must "assume as true" the allegations of the plaintiff's complaint that the defendant had made certain express promises.

8. *See Finch v. Greatland Foods, Inc.*, 21 P.3d 1282, 1289 (Alaska 2001) (future performance under an agreement not barred by release clause in same agreement).

versity was not before the board.[9] None of the parties' briefs discussed this aspect of the superior court's decision. It may represent a ruling that collateral estoppel effect should be given to the quoted statement. If so, such a ruling seems inappropriate at this point, as the University did not argue that the statement should be given collateral estoppel effect. There has been no discussion as to whether the statement meets the requirements for issue preclusion by operation of the doctrine of collateral estoppel as applied to administrative agencies.[10] Further, if collateral estoppel effect is to be given, the consequences of that effect are both uncertain and unbriefed. For these reasons we believe that questions concerning the effect of the board proceeding and its resolution on appeal must be decided on remand after appropriate briefing.

## IV. CONCLUSION

For the above reasons the judgment of the superior court is REVERSED and this case is REMANDED for further proceedings.

FABE, Chief Justice, with whom CARPENETI, Justice, joins, dissenting.

I disagree with the court's decision because I believe that a reasonable person would have understood the release to waive Barry's right to assert his three claims against the University.

In *Philbin v. Matanuska–Susitna Borough*, we held that in determining whether a release bars a claim, "the focus is on what a reasonable person would have understood the release language to have meant."[1] The release of claims and covenant not to sue signed by Barry was expansively worded:

> In consideration of the University of Alaska's taking such administrative steps as are necessary to enable the position held by Dr. Douglas K. Barry to qualify under the University's current statutorily authorized Retirement Incentive Program, *Dr. Barry hereby releases the University of Alaska ... from any and all claims ... known or unknown, past, present, or future, arising out of or directly or indirectly or in any way connected with his employment with the University prior to July 1, 1997, including but not limited to those relating to tenure, retirement or other employee benefits* ....
>
> This Release of Claims and Covenant Not to Sue is entered into by Dr. Barry knowingly and voluntarily, with full under-

9. We set out here the relevant findings of the Teachers' Retirement Board. After noting that the first two elements of Barry's claim of estoppel against the board were assertion of a position by the board by conduct or words and reasonable reliance by Barry, the board wrote:

> Dr. Barry has not proven by the preponderance of the evidence that he has met each of the four elements, particularly the first two elements noted above.
>
> *First,* while UAA may well have erred in recording Dr. Barry's work history, the Division did not independently err and thereby "assert" a position. It is the employer which *provides* employment records. 2 AAC 36.840. The Division has no independent basis to conclude that employment records are correct, although as in this case, it may well seek verification of records when certain red flags occur in a records check. In any event, the prospective retiree is advised that the employer, not the Division, is the source of employment information. The distinction between the Division's responsibilities in administering TRS and the employer has been confirmed in cases such as *Holmberg v. State Division of Risk Management,* 796 P.2d 823 (Alaska 1990). The Division, unlike the *Crum [v. Stalnaker,*

936 P.2d 1254 (Alaska 1997)] circumstances, did not cause, by omission or commission, Dr. Barry to retire based on erroneous information.

*Second,* Dr. Barry has not demonstrated a reasonable reliance upon information provided by the Division given notice that the employer is the source of employment information and also given the fact that, at least with respect to certain periods of time, Dr. Barry was the person with the best knowledge of when he was not employed—particularly the erroneously reported period of uninterrupted service between 1980 and 1985.

10. Judge Torrisi's statement did not purport to be independent fact finding; it was a characterization of what the board found. Thus the rules governing issue preclusion arising out of facts found in administrative proceedings must be consulted. *See generally* RESTATEMENT (SECOND) OF JUDGMENTS § 83 (1982); *Johnson v. State, Dep't of Fish & Game,* 836 P.2d 896, 906–09 (Alaska 1991) ("a determination of the appropriate preclusive effect of administrative decisions is possible only on a case by case analysis").

1. 991 P.2d 1263, 1266–67 (Alaska 1999).

standing of its consequences, following an opportunity to obtain independent review by legal counsel of his own choosing.

(Emphasis added.)

In my view, a reasonable person would interpret the plain language of this broad release to mean what it says: that Barry released all claims arising out of his employment and retirement in exchange for the University taking the administrative steps necessary to enable Barry to receive RIP benefits. In *Alyeska Pipeline Service Co. v. Shook*, we concluded that an Alaska Wage and Hour Act claim against a former employer was barred by a separation agreement in which the employee released the employer "from any and all claims ... known or unknown, fixed or contingent, which EMPLOY-EE may have or claim to have arising from his employment or as a result of this separation of employment."[2] Barry's release contains similarly broad language. The fact that neither Barry's final retirement benefit nor the twenty years of service were actually discussed in the settlement negotiations or expressly listed in the release agreement does not alter my conclusion that the release bars Barry's claims.[3] Barry signed a general release covering all claims, known and unknown, just as the employee in *Alyeska Pipeline* did, and this broad language indicates the parties' intent to settle all possible claims connected to Barry's employment prior to July 1, 1997.[4]

Moreover, Barry's claims relating to his years of service were " 'reasonably ascertainable' at the time of executing the settlement."[5] In *Martech Construction Co. v. Ogden Environmental Services, Inc.*, we held that although the contractor's alleged breach of contract occurred after the settlement, it was the last step in a dispute that existed prior to settlement, and the settlement sought to resolve the entire transaction and thus barred the claim.[6] We explained that "[t]he claim ... was an issue which was 'reasonably ascertainable' at the time of executing the settlement" and "Martech should have anticipated that the ... issue would be resolved by the settlement along with the entirety of the contractual relationship."[7] When executing the settlement with the University, Barry could reasonably have ascertained that a dispute could arise about his years of service and the final dollar amount of his benefits, given the complexity of the calculations and his irregular terms of service. This is particularly the case because: (1) as the employee, Barry was in the best position to know that he had actually worked about two years less than the statements erroneously indicated, (2) the statements indicated that the periods of service were subject to verification, and (3) the statements indicated that the employee should notify the employer of any discrepancies. Even if Barry could not himself calculate the exact number of years he had worked or the dollar amount to which he was entitled, he could have inserted into the release a provision reserving his right to sue over discrepancies in the dollar amount based on his years of service; because he did not, he has lost that right.[8]

**2.** 978 P.2d 86, 88 n. 2, 89 (Alaska 1999); *see also Martech Constr. Co. v. Ogden Envtl. Servs., Inc.*, 852 P.2d 1146, 1151–52 (Alaska 1993) (holding that settlement agreement purporting to cover "claims of any nature whatsoever" between contractor and subcontractor acted to bar subsequent claim to recover amount paid by subcontractor to third-party supplier of switchgear).

**3.** *See Martech*, 852 P.2d at 1150 n. 8 ("[T]he fact that the switchgear was not discussed cannot be interpreted as a positive inference that the release was not intended to address it.").

**4.** *See Alyeska Pipeline Serv. Co.*, 978 P.2d at 89 ("The parties' broad language reveals an intention to resolve all possible claims arising from Shook's employment."); *see also Martech*, 852 P.2d at 1152 ("The broad language used implies

that claims not specifically contemplated are settled.").

**5.** *Martech*, 852 P.2d at 1151–52 (quoting *Petroleum Sales, Ltd. v. Mapco Alaska, Inc.*, 687 P.2d 923, 930 (Alaska 1984)).

**6.** *Id.* at 1151.

**7.** *Id.* at 1151–52 (quoting *Mapco*, 687 P.2d at 930).

**8.** *See Alyeska Pipeline Serv. Co.*, 978 P.2d at 89 ("[A]ny claims not specifically reserved must be considered settled by the agreement."); *Martech*, 852 P.2d at 1152 ("The broad language used implies that claims not specifically contemplated are settled.... There are no catch-all phrases to

I agree with the court that if by virtue of the release agreement itself, or a separate contract incorporated by reference into the release or entered into contemporaneously with the release, the University promised Barry $3,388.90 per month in retirement benefits, then that payment would be part of the quid pro quo, and the release would not bar a claim that such a contract was breached.[9] But Barry has offered no evidence indicating that the University entered the release with the intent to resolve a dispute over his years of actual service as opposed to his eligibility for the RIP. As Barry himself points out in his reply brief, the dispute leading to the release related "not [to] the question of whether he would have twenty years of service required to qualify for retirement, but on whether a cost saving would accrue to the University" by granting Barry RIP benefits.

And Barry has not offered adequate evidence that such a promise or separate retirement contract existed, much less that it was entered into contemporaneously with the release agreement or that it was incorporated by reference into the release. The only document mentioning the $3,388.90 figure is the December 1996 Division of Retirement and Benefits computer-generated statement projecting Barry's retirement benefits, but this does not evidence the University's intent to enter into a retirement contract with Barry

for that amount. It expressly states that "the above projection of your benefits is an estimate only[,] based on service and earnings reported to the system throughout your career. Your actual benefit amount may differ somewhat at retirement because it will be based on employer verified service and earnings." Because of the conditional language in this statement, Barry had reason to know it was not an offer for a specific dollar amount;[10] thus, he could not rely on the statement as a promise to pay him $3,388.90 per month.[11] Moreover, the December 1996 Division of Retirement and Benefits statement projecting Barry's retirement benefits was sent out seven months before the parties signed the release agreement. The language of the release indicates that neither a specific monthly retirement benefit nor calculation of that benefit based on a specific number of years of service was contemplated by the parties.

Finally, the court faults the University for failing to refute in its motion for summary judgment Barry's claim that he had an agreement with the University to retire with a specific benefit. But by attaching Jean Sagan's affidavit to its motion for summary judgment, the University satisfied its burden of making a prima facie showing that the release did not contain a promise to pay

preserve omitted claims as there are to abandon them.").

9. See, e.g., Finch v. Greatland Foods, Inc., 21 P.3d 1282, 1289 (Alaska 2001) (holding that prior release agreement did not bar subsequent claims that employer violated settlement agreement itself).

10. See Copper River Sch. Dist. v. Traw, 9 P.3d 280, 283 (Alaska 2000) ("Section 26 [of the Restatement of Contracts] informs us that '[a] manifestation of willingness to enter into a bargain is not an offer if the person to whom it is addressed knows or has reason to know that the person making it does not intend to conclude a bargain until he has made a further manifestation of assent.' ") (quoting RESTATEMENT (SECOND) OF CONTRACTS § 26 (1981)); Davis v. Dykman, 938 P.2d 1002, 1006 (Alaska 1997) ("The formation of a valid contract requires an offer encompassing all essential terms, unequivocal acceptance by the offeree, consideration, and an intent to be bound."); RESTATEMENT (SECOND) OF CONTRACTS

§ 33(3) (1981) ("The fact that one or more terms of a proposed bargain are left open or uncertain may show that a manifestation of intention is not intended to be understood as an offer or as an acceptance.").

11. See Perreca v. Gluck, 295 F.3d 215, 225–26 (2d Cir.2002) ("To the extent that plaintiffs suggest that this statement of projected benefits alone constituted a promise supporting their claim of promissory estoppel, we reject their claim ... [i]n light of the prominent disclaimer printed on the statement that specifically cautioned Perreca that '[a]ctual benefits are ... subject to verification before any payments are authorized'...."); Simonds v. N.Y. State Teachers' Ret. Sys., 42 A.D.2d 470, 349 N.Y.S.2d 140, 143 (N.Y.App.Div. 1973) ("[R]espondents were not estopped from lowering petitioner's benefits since their original statement to him was an estimate only and expressly based upon an assumption which proved to be untrue."); see also Galanthay v. N.Y. State Teachers' Ret. Sys., 50 N.Y.2d 984, 431 N.Y.S.2d 472, 409 N.E.2d 945, 946 (1980).

Barry a specific dollar amount.[12] Sagan's affidavit states: "The pre-litigation settlement offer by the University did not involve any guarantees or assurances to Barry by the University as to what monthly retirement benefit Barry would receive from the State of Alaska."[13] Barry has not met his burden of setting forth evidence that reasonably tends to dispute Sagan's statement.[14] In support of his opposition to the University's motion for summary judgment, Barry offered a two-paragraph affidavit authenticating the attached TRS and University records. However, that affidavit does not squarely assert that the University specifically promised Barry that he would receive a particular stream of income. Rather, it refers only to Barry's "belief he would receive retirement benefit[s] of $3,388.90 per month because he had put in twenty years with the University." Because Barry's subjective belief alone is insufficient to establish that he had a contract for a specific dollar amount,[15] Barry's affidavit does not adequately dispute Sagan's affidavit. As a matter of law, then, the evidence offered by Barry does not support a theory that the University contemporaneously formed a valid contract to pay Barry a specific retirement amount each month or that the release agreement itself contained or incorporated such a promise. Because Sagan's affidavit satisfied the University's burden of establishing a prima facie case that the University did not enter into a contract to pay Barry a specific retirement benefit, and because Barry did not adequately re-

spond to this evidence, the superior court properly granted summary judgment to the University.

For these reasons, I believe that all of Barry's claims are barred by the release, and I respectfully dissent.

**12.** *See Himschoot v. Dushi*, 953 P.2d 507, 509 (Alaska 1998) ("The moving party has the entire burden of proving that his opponent's case has no merit.") (citation and quotation marks omitted).

**13.** In addition, the University attached to its opposition to Barry's motion to strike, and to its reply to Barry's opposition to its motion for summary judgment, an affidavit from Amy Clifford, which states: "I did *not* inform Barry that he would have twenty (20) years of credit service at UA at the end of FY97 without the three (3) RIP years. The three (3) RIP years were used in my calculation to get Barry to twenty years of service at the end of FY97.... I never suggested to Barry what the amount of his retirement benefit would be from the State of Alaska. That is a calculation which the State performs, not UA."

**14.** *See Lincoln v. Interior Reg'l Hous. Auth.*, 30 P.3d 582, 586 (Alaska 2001) ("The non-movant is

required, in order to prevent entry of summary judgment, to set forth specific facts showing that [s]he could produce admissible evidence reasonably tending to dispute or contradict the movant's evidence, and thus demonstrate that a material issue of fact exists.") (alteration in original) (citation and quotation marks omitted); *Martech*, 852 P.2d at 1149 n. 7 ("[A]n adverse party may not rest upon mere allegations, but must set forth specific facts showing that there is a genuine issue of material fact. To create a genuine issue of material fact there must be more than a scintilla of contrary evidence.") (citations omitted).

**15.** *See, e.g., Boone v. Frontier Ref., Inc.*, 987 P.2d 681, 686 (Wyo.1999) ("Boone's subjective belief that he could not be discharged unless just cause existed was insufficient to create a contract for continued employment.").